[No. S165549. July 26, 2010.]

ALAN RICHARD KLEIN et al., Plaintiffs and Appellants, v.
UNITED STATES OF AMERICA et al., Defendants and Respondents.

## COUNSEL

Santiago Rodnunsky & Jones, David G. Jones and Tamara S. Fong for Plaintiffs and Appellants.

Thomas P. O'Brien, United States Attorney, Leon W. Weidman, Julie Zatz, Jonathan B. Klinck and Anoiel Khorshid, Assistant United States Attorneys, for Defendants and Respondents.

Sedgwick, Detert, Moran & Arnold and Frederick D. Baker for Pacific Gas & Electric Company, Southern California Edison Company, Southern California Gas Company and San Diego Gas & Electric Company as Amici Curiae on behalf of Defendants and Respondents.

Randolph Cregger & Chalfant and Joseph P. Mascovich for Union Pacific Railroad Company as Amicus Curiae on behalf of Defendants and Respondents.

## OPINION

**KENNARD, J.**—Plaintiff Alan Richard Klein was riding a bicycle for recreation on a two-lane paved road in Angeles National Forest in Southern California when he was struck head-on by an automobile driven by a part-time volunteer working for the United States Fish and Wildlife Service. Having been seriously injured in the collision, plaintiff sued the United States government (the owner of the national forest land) and its volunteer worker.

At issue here is the scope and applicability of California's Civil Code section 846, which provides, as relevant here, that a landowner "owes no duty of care to keep the premises safe for entry or use by others for any recreational purpose." The Ninth Circuit Court of Appeals has asked this court to decide whether this provision applies to "acts of vehicular negligence

committed by the landowner's employee in the course and scope of his employment that cause personal injury to a recreational user of that land."[1]

We conclude that Civil Code section 846's liability shield does not extend to acts of vehicular negligence by a landowner or by the landowner's employee while acting within the course of the employment. We base this conclusion on section 846's plain language. The statutory phrase "keep the premises safe" is an apt description of the property-based duties underlying premises liability, a liability category that does not include vehicular negligence. Furthermore, a broad construction of that statutory phrase would render superfluous another provision of section 846 shielding landowners from liability for failure to warn recreational users about hazardous conditions or activities on the land.

## I

The facts are taken from the Ninth Circuit's order in *Klein v. U.S.* (9th Cir. 2008) 537 F.3d 1027 requesting that this court decide a question of California law.

On August 29, 2004, plaintiff Alan Richard Klein was riding his bicycle for recreation on Bear Divide Road in Angeles National Forest in California. Bear Divide Road is a two-lane paved road that is open to the public and that is owned and maintained by defendant United States government. As plaintiff[2] was cycling northbound, he was struck head-on by an automobile driven by defendant David Anderberg, a part-time volunteer for the United States Fish and Wildlife Service, who later told a California Highway Patrol officer that at the time of the collision he had been on his way to observe birds.

The injuries plaintiff sustained in the collision were severe, including a partially severed ear, broken ribs, a collapsed lung, a brain injury affecting memory and speech, and a brachial plexus injury[3] that permanently deprived him of the use of his left arm. In addition to these physical injuries, the collision resulted in a substantial loss of income, and thus serious financial

---

[1] Rule 8.548(a) of the California Rules of Court provides: "On request of the United States Supreme Court, a United States Court of Appeals, or the court of last resort of any state, territory, or commonwealth, the [California] Supreme Court may decide a question of California law if: [¶] (1) The decision could determine the outcome of a matter pending in the requesting court; and [¶] (2) There is no controlling precedent."

[2] Although both Alan Klein and his wife Sheryll Klein are plaintiffs in this lawsuit, for convenience we use "plaintiff" in the singular to refer to Alan Klein.

[3] The brachial plexus is a network of nerves running from the neck to each arm and controlling the movement of certain chest and arm muscles. (See Mosby's Medical Dict. (5th ed. 1998) p. 218.)

hardship, to plaintiff and his wife, coplaintiff Sheryll Klein. This occurred because plaintiff was forced to take a medical retirement from his federal government job as an air traffic controller, while his wife, so that she could provide care for plaintiff, took an early retirement from her job as an elementary school principal.

After exhausting their administrative remedies, plaintiffs brought suit against the United States and Anderberg in federal district court in the Central District of California. The action against the United States was brought under the Federal Tort Claims Act (28 U.S.C. § 2671 et seq.), which provides for liability "where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." (28 U.S.C. § 1346(b)(1).) Against the United States, plaintiffs alleged two negligence theories: (1) the United States negligently maintained Bear Divide Road in an unsafe condition, and (2) the United States was vicariously liable for the vehicular negligence[4] of its volunteer employee, David Anderberg. Only the latter negligence theory is at issue here.

In its answer to plaintiffs' complaint, the United States defended on the ground that Civil Code section 846 shielded it, as owner of the United States Forest Service land on which the accident had occurred, from any negligence liability to a person, such as plaintiff, who was injured while using that land for recreation. The United States also disputed plaintiffs' allegation that, at the time of the accident, Anderberg was acting in the course and scope of his employment as a Forest Service volunteer.

The United States filed a summary judgment motion, which the district court granted. Regarding plaintiffs' negligence theory that the United States was vicariously liable for Anderberg's vehicular negligence, the district court assumed for purposes of ruling on the motion that at the time of the accident Anderberg was a United States employee acting within the course and scope of his employment. The district court concluded, nonetheless, that California's Civil Code section 846 immunized the United States, as a landowner, from liability for any injuries to plaintiffs resulting from negligent driving by Anderberg.

Plaintiffs appealed to the Ninth Circuit Court of Appeals. Recognizing the important issue of California law presented by this case, the Ninth Circuit requested that we decide this question: Does section 846 immunize a landowner from liability for acts of vehicular negligence committed by the landowner's employee in the course and scope of his employment that cause personal injury to a recreational user of that land?

---

[4] As we use it here, the term "vehicular negligence" means negligence in *driving* a motor vehicle, as opposed to other forms of negligence involving a vehicle, such as leaving the vehicle parked in an unsafe location or in an unsafe condition.

## II

In its order requesting that this court decide a question of California law, the Ninth Circuit explained why it had concluded that the question had not been authoritatively resolved under existing precedents. The Ninth Circuit's explanation provides a useful background for resolving the legal question at issue.

The Ninth Circuit observed, preliminarily, that although the landowner in this case happens to be the United States, under the Federal Tort Claims Act the federal government is liable only if a private person would be liable in the same circumstances under state law. Accordingly, the question to be decided is whether Civil Code section 846's immunity would protect a private landowner from liability for damages resulting from physical harm to a person who has entered the landowner's property to engage in a recreational activity, when that harm was caused by the vehicular negligence of the landowner or the landowner's employee. (*Klein v. U.S.*, *supra*, 537 F.3d 1027, 1030.)

Regarding that question, the Ninth Circuit concluded that there was " 'no clear controlling California precedent' squarely" addressing the issue. (*Klein v. U.S.*, *supra*, 537 F.3d 1027, 1030.) The court recognized that an intermediate state appellate court—Division Six of the Second Appellate District Court of Appeal—had held, in *Shipman v. Boething Treeland Farms, Inc.* (2000) 77 Cal.App.4th 1424 [92 Cal.Rptr.2d 566], that Civil Code section 846's landowner immunity does extend to vehicular negligence. In *Shipman*, the plaintiff, a 16-year-old boy, was driving an all-terrain vehicle along a dirt road on the defendants' private property when his vehicle collided with a station wagon driven by the defendants' employee. The plaintiff sued the defendants, seeking damages for personal injury suffered in the collision, basing the action in part on the theory that the defendants were vicariously liable for negligent driving by their employee. The trial court granted summary judgment for the defendants, and the plaintiff appealed. The Court of Appeal affirmed, concluding that Civil Code section 846 shielded the defendants from negligence liability for an injury to an uninvited recreational user of their land, even an injury caused by vehicular negligence. (*Shipman*, *supra*, 77 Cal.App.4th at pp. 1428, 1432.)

The Ninth Circuit recognized that *Shipman* is squarely on point, and it acknowledged that it generally accepts state intermediate appellate court decisions in the absence of relevant precedent from a state's highest court. (*Klein v. U.S.*, *supra*, 537 F.3d 1027, 1031–1032.) But the Ninth Circuit said that in this particular instance it had found what it termed "convincing evidence" that this court likely would disagree with the Court of Appeal's

decision in *Shipman*. (*Klein*, at p. 1032.) The Ninth Circuit explained that it had found nothing in Civil Code section 846's language, or in the circumstances surrounding its enactment, to indicate that it was intended to provide immunity for negligent driving or, otherwise stated, that it was "anything more than a premises liability exemption statute." (*Klein v. U.S., supra*, 537 F.3d 1027, 1032.)

Its doubts about *Shipman*'s validity were also based, the Ninth Circuit explained, on certain statements in this court's opinions in *Ornelas v. Randolph* (1993) 4 Cal.4th 1095 [17 Cal.Rptr.2d 594, 847 P.2d 560] (*Ornelas*) and *Avila v. Citrus Community College Dist.* (2006) 38 Cal.4th 148 [41 Cal.Rptr.3d 299, 131 P.3d 383] (*Avila*). (*Klein v. U.S., supra*, 537 F.3d 1027, 1032–1034.)

In *Ornelas*, this court held that Civil Code section 846 immunized a property owner from liability for personal injuries that eight-year-old Jose Ornelas had sustained on the owner's property. The injuries occurred when other children playing on top of old farm machinery that was stored on the defendant's property dislodged a metal pipe that fell on the Ornelas child. (*Ornelas, supra*, 4 Cal.4th 1095, 1098.) This court rejected the argument, supported by earlier Court of Appeal decisions, that Civil Code section 846 does not apply if the property on which the injury occurred was, at the time of the injury, unsuitable for recreational use. (*Ornelas, supra*, at p. 1108.) The Ninth Circuit found significance in this court's explanation in *Ornelas* of the rationale for section 846 immunity: "One who avails oneself of the opportunity to enjoy access to the land of another for one of the recreational activities within the statute may not be heard to complain that the property was inappropriate for the purpose." (*Ornelas, supra*, at p. 1108.) This description, the Ninth Circuit stated, "invokes the concept of premises liability." (*Klein v. U.S., supra*, 537 F.3d 1027, 1033.)

*Avila*, the other decision of this court mentioned by the Ninth Circuit, did not directly involve Civil Code section 846. Rather, it concerned the scope of California's Government Code section 831.7, which immunizes public entities from liability for injuries sustained during a "hazardous recreational activity."[5] But in *Avila* this court recognized that section 831.7's legislative history revealed that it had been "designed to mirror Civil Code section 846's circumscription of property-based duties." (*Avila, supra*, 38 Cal.4th 148,

---

[5] Government Code section 831.7, subdivision (a), provides: "Neither a public entity nor a public employee is liable to any person who participates in a hazardous recreational activity, including any person who assists the participant, or to any spectator who knew or reasonably should have known that the hazardous recreational activity created a substantial risk of injury to himself or herself and was voluntarily in the place of risk, or having the ability to do so failed to leave, for any damage or injury to property or persons arising out of that hazardous recreational activity."

157.) For that reason, this court in *Avila* gave some consideration to the scope of the immunity conferred by section 846. The Ninth Circuit reasoned that what this court said in *Avila* about section 846, although not binding as precedent, was relevant in determining how this court would likely decide the question of California law regarding the scope of section 846. (*Klein v. U.S.*, *supra*, 537 F.3d 1027, 1032–1033.)

In *Avila*, the plaintiff was a college student who had been struck in the head by a pitched ball while at bat during an intercollegiate baseball game at a community college. (*Avila*, *supra*, 38 Cal.4th 148, 152.) The plaintiff sued the college, seeking damages for unspecified personal injuries caused by being hit by the baseball. (*Id.* at pp. 152–153.) He alleged that the pitcher had hit him intentionally and that the college was negligent in failing to supervise and control the pitcher. (*Id.* at p. 153.) In a demurrer to the plaintiff's complaint, the defendant community college relied on Government Code section 831.7. The trial court sustained the demurrer, but on the plaintiff's appeal, the Court of Appeal reversed, concluding that section 831.7 did not apply under these circumstances. (*Avila*, *supra*, at p. 153.) This court granted review.

Finding Government Code section 831.7's relevant language somewhat ambiguous, this court reviewed the statute's legislative history to determine the legislative intent underlying its enactment. This court stated its conclusion about that legislative intent in these words, which the Ninth Circuit considered particularly significant: "Thus, Government Code section 831.7 was adopted as a premises liability measure, modeled on Civil Code section 846, and designed to limit liability based on a public entity's failure either to maintain public property or to warn of dangerous conditions on public property. Nothing in the history of the measure indicates the statute was intended to limit a public entity's liability arising from other duties, such as any duty owed to supervise participation in particular activities." (*Avila*, *supra*, 38 Cal.4th 148, 157–158.)

Ultimately, however, this court found it unnecessary to decide "whether the immunity created by [Government Code] section 831.7 extends only to premises liability claims." (*Avila*, *supra*, 38 Cal.4th 148, 159.) Instead, this court reached the narrower conclusion that "school-sponsored and supervised sports activities are not 'recreational' in the sense intended by the statute, and thus section 831.7 does not apply to immunize public educational entities from liability to students for injuries sustained during participation in such activities." (*Ibid.*)

Finally, to explain its request that this court decide whether Civil Code section 846's immunity extends to vehicular negligence claims, the Ninth

Circuit stressed the potential impact the resolution of that issue would have, in these words: "[I]t is of no small moment that the federal government owns millions of acres of National Park and National Forest land within the state of California. Shielding the United States from liability for the negligent driving, and possibly for other negligent acts, of its employees on all of these lands may have substantial and negative consequences for the many residents of and visitors to California who make use of federal lands for recreational purposes." (*Klein v. U.S., supra*, 537 F.3d 1027, 1033.)

## III

In construing statutes, we aim "to ascertain the intent of the enacting legislative body so that we may adopt the construction that best effectuates the purpose of the law." (*Hassan v. Mercy American River Hospital* (2003) 31 Cal.4th 709, 715 [3 Cal.Rptr.3d 623, 74 P.3d 726]; accord, *Chavez v. City of Los Angeles* (2010) 47 Cal.4th 970, 986 [104 Cal.Rptr.3d 710, 224 P.3d 41]; *Coachella Valley Mosquito & Vector Control Dist. v. California Public Employment Relations Bd.* (2005) 35 Cal.4th 1072, 1087 [29 Cal.Rptr.3d 234, 112 P.3d 623].) We look first to the words of the statute, "because the statutory language is generally the most reliable indicator of legislative intent." (*Hassan v. Mercy American River Hospital, supra*, at p. 715; accord, *Chavez v. City of Los Angeles, supra*, at p. 986; *People v. Toney* (2004) 32 Cal.4th 228, 232 [8 Cal.Rptr.3d 577, 82 P.3d 778].)

When the statutory text is ambiguous, or it otherwise fails to resolve the question of its intended meaning, courts look to the statute's legislative history and the historical circumstances behind its enactment. (*Mejia v. Reed* (2003) 31 Cal.4th 657, 663 [3 Cal.Rptr.3d 390, 74 P.3d 166].) Finally, the court may consider the likely effects of a proposed interpretation because " '[w]here uncertainty exists consideration should be given to the consequences that will flow from a particular interpretation.' " (*Ibid.*, quoting *Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387 [241 Cal.Rptr. 67, 743 P.2d 1323].)

We turn now to the text of Civil Code section 846 to determine its plain meaning with regard to the statute's purpose.

### A. Statutory Language

Civil Code section 846, in its first paragraph, defines the scope of the immunity granted to California landowners, in these words: "An owner of any estate or any other interest in real property, whether possessory or nonpossessory, owes no duty of care to keep the premises safe for entry or use by others for any recreational purpose or to give any warning of

hazardous conditions, uses of, structures, or activities on such premises to persons entering for such purpose, except as provided in this section." In its second paragraph, section 846 defines "recreational purpose" by reference to a list of activities that qualify as "recreational," including among them all types of "vehicular riding." In its third paragraph, section 846 states that by allowing another to enter or use property for recreation the property's owner does not "(a) extend any assurance that the premises are safe for such purpose, or (b) constitute the person to whom permission has been granted the legal status of an invitee or licensee to whom a duty of care is owed, or (c) assume responsibility for or incur liability for any injury to person or property caused by any act of such person to whom permission has been granted except as provided in this section." Finally, in its fourth paragraph, section 846 provides three limitations on, or exceptions to, the landowner immunity it has granted, stating that the immunity does not apply to "willful or malicious failure to guard or warn against a dangerous condition, use, structure or activity," nor does it apply when permission to enter is granted for a consideration, nor when persons are expressly invited rather than merely permitted to enter the land.

■ Preliminarily, we observe that although Civil Code section 846 is commonly referred to as an immunity provision, and although for convenience we refer to it that way here, it does not confer an immunity in the strictest sense of that term, which is "a complete defense . . . [that] does not negate the tort." (Black's Law Dict. (1996 pocket ed.) p. 298; see *Myers v. Philip Morris Companies, Inc.* (2002) 28 Cal.4th 828, 832, fn. 2 [123 Cal.Rptr.2d 40, 50 P.3d 751].) Section 846 does not merely eliminate a damage remedy for certain types of negligent conduct by a landowner. The wording of section 846's first paragraph, providing that a landowner "owes no duty of care" to persons using the land for recreation, either to maintain safe premises or to warn of hazards, does indeed "negate the tort," because the existence of a duty owed to the injured person is an essential element of the negligence tort. (See *Paz v. State of California* (2000) 22 Cal.4th 550, 559 [93 Cal.Rptr.2d 703, 994 P.2d 975].)

By the plain meaning of the language in its first paragraph, Civil Code section 846 absolves California landowners of two separate and distinct duties: the duty to "keep the premises safe" for recreational users, and the duty to warn such users of "hazardous conditions, uses of, structures, or activities" on the premises. (Civ. Code, § 846, 1st par.) Section 846's third paragraph adds an additional immunity, stating that by granting permission to enter for recreational use a property owner does not extend any assurance that the premises are safe for recreational use, confer on the recreational user the legal status of an invitee or licensee, or assume responsibility for any injury

that a recreational user may cause to another person. This latter provision shields the landowner from liability for injuries caused by (rather than to) recreational users.

Here, we are concerned only with the scope of the first of these immunities, which absolves property owners of any duty to "keep the premises safe" for recreational use. The allegations of plaintiffs' complaint do not implicate the other forms of immunity afforded by Civil Code section 846. Plaintiffs have not sued under a failure-to-warn theory, they have not alleged that plaintiff Alan Klein relied on any assurance that the property was safe, they have not alleged that plaintiff Alan Klein was an invitee or licensee, and they have not alleged that another recreational user caused plaintiff Alan Klein's injuries. These other forms of section 846 immunity are relevant here only insofar as they assist us in construing the scope of the safe-premises immunity.

For three reasons, we conclude that the plain language of Civil Code section 846's first paragraph, absolving landowners of the safe-premises duty, supports the conclusion that section 846 does not relieve landowners of the duty to avoid vehicular negligence. First, the phrase "keep the premises safe" is an apt description of the property-based duties underlying premises liability, a liability category that does not include vehicular negligence. Second, differences in the statutory descriptions of the safe-premises immunity and the hazard-warning immunity suggest that the former is considerably narrower in scope and does not apply to activities like motor vehicle driving. Third, the expansive construction of the safe-premises clause urged by the United States would render the hazard-warning clause superfluous. We elaborate on these reasons.

As we have noted, Civil Code section 846, in its first paragraph, absolves landowners of the duty "to keep the premises safe." The United States urges us to construe this provision as absolving landowners from any duty of care to refrain from negligence in the conduct of activities, such as driving motor vehicles, on their land. In other words, the United States would have us construe the duty "to keep the premises safe" as being coextensive with the duty to use due care to avoid injury to recreational users of their land, subject only to the three immunity exceptions—willful or malicious conduct, entry granted for a consideration, and express invitation—that are set forth in section 846's fourth paragraph. We disagree.

First, it is unlikely that California's Legislature intended Civil Code section 846's premises-based language to be interpreted so broadly as to include any and all factors that might create a personal injury risk on one's property. Had the Legislature intended such a broad immunity, it would have been a simple

matter to provide in section 846 that landowners owe no duty of care to avoid personal injury to persons using their land for recreation. By providing instead that a landowner owes no duty to "keep the premises safe," the Legislature has selected language implying a narrower immunity, focused on premises liability claims arising from property-based duties. As one Court of Appeal has explained, "[b]roadly speaking, premises liability alleges a defendant property owner allowed a dangerous condition on its property or failed to take reasonable steps to secure its property against criminal acts by third parties." (*Delgado v. American Multi-Cinema, Inc.* (1999) 72 Cal.App.4th 1403, 1406, fn. 1 [85 Cal.Rptr.2d 838]; see also *Alcaraz v. Vece* (1997) 14 Cal.4th 1149, 1156 [60 Cal.Rptr.2d 448, 929 P.2d 1239] [premises liability is based on the duty "to maintain land in one's possession in a reasonably safe condition"].) The duty to drive a motor vehicle safely, by contrast, does not arise from ownership or possession of land.

■ The second reason is based on a comparison of the statutory language describing the safe-premises and hazard-warning immunities. It is a general rule of statutory construction that "[w]hen one part of a statute contains a term or provision, the omission of that term or provision from another part of the statute indicates the Legislature intended to convey a different meaning." (*Cornette v. Department of Transportation* (2001) 26 Cal.4th 63, 73 [109 Cal.Rptr.2d 1, 26 P.3d 332]; accord, *Wasatch Property Management v. Degrate* (2005) 35 Cal.4th 1111, 1118 [29 Cal.Rptr.3d 262, 112 P.3d 647]; *People v. Gardeley* (1996) 14 Cal.4th 605, 621–622 [59 Cal.Rptr.2d 356, 927 P.2d 713].) In Civil Code section 846's first paragraph, the statutory description of the hazard-warning immunity expressly refers to hazardous "uses of" and "activities on" as well as "conditions" of the owner's land. By contrast, the statutory description of the safe-premises immunity makes no reference to uses or activities. It does not, for example, absolve a landowner of a duty to "keep *activities* on the premises safe," but only from the duty to keep "the premises" themselves safe. Had the Legislature intended to extend the liability shield to negligently conducted activities, such as dangerous driving, it could simply have provided, in the first paragraph, that a landowner owes no duty of care to avoid, prevent, remedy, or give any warning of hazardous conditions, uses, structures, or activities, on the land. The Legislature did not do so. Instead, it selected language carrying a strong implication that the safe-premises immunity is narrower than the hazard-warning immunity, and does not extend to unsafe activities such as negligent driving of a vehicle.

■ The third reason relies on another statutory construction principle, that courts must strive to give meaning to every word in a statute and to avoid constructions that render words, phrases, or clauses superfluous. (*People v. Trevino* (2001) 26 Cal.4th 237, 245–246 [109 Cal.Rptr.2d 567, 27 P.3d 283]; *People v. Woodhead* (1987) 43 Cal.3d 1002, 1010 [239 Cal.Rptr. 656, 741 P.2d 154].) The broad construction of the safe-premises immunity

provision that the United States urges us to adopt would violate this rule. The duty to "keep the premises safe," as the United States views it, encompasses not only the duty to prevent or remedy hazardous *conditions* on the property, and possibly also to guard against criminal activity by third parties, but also the duty to use due care in the conduct of *any activity* on the property. In other words, the United States would have us construe the language in Civil Code section 846's first paragraph absolving landowners of the duty "to keep the premises safe" as absolving landowners of any duty of care to avoid personal injury to recreational users of their land. But such a broad reading of the safe-premises immunity would encompass tort claims based on a failure to warn of potentially dangerous activities because, as to such activities, a landowner can "keep the premises safe" either by conducting the activities in a safe manner or by warning others of the risks posed by those activities. Therefore, it is not reasonable to construe the phrase "keep the premises safe" as encompassing one of those alternative safety approaches but not the other. Unless the phrase "keep the premises safe" is construed narrowly to mean preventing or remedying dangerous physical conditions on the property, the alternative expansive construction renders superfluous the separate liability shield for failures to warn of hazardous activities. ■ To give independent meaning and purpose to Civil Code section 846's hazard-warning clause, we construe Civil Code section 846's safe-premises clause more narrowly to encompass only premises liability claims arising from alleged breaches of property-based duties.

■ For these three reasons that are based on the plain language of Civil Code section 846's first paragraph, we conclude that section 846 does not bar a recreational user's vehicular negligence claim against a landowner.[6] Although section 846 is broad in many respects, it is not all-encompassing, and it does not release landowners or their employees from their basic duty to use due care while engaged in potentially hazardous activities such as driving a motor vehicle.

Our conclusion is not altered by consideration of the language of Civil Code section 846's fourth paragraph stating that the section "does not limit the liability which otherwise exists . . . for willful or malicious failure to guard or warn against a dangerous condition, use, structure or activity." This provision establishes a limitation on, or exception to, the various section 846 immunities. The reference to a "willful or malicious failure to . . . *warn against* a dangerous condition, use, structure or activity" (italics added) limits the hazard-warning immunity provided by section 846's first paragraph. The reference to a "willful or malicious failure to guard . . . against a dangerous condition, use, structure or activity" limits both the safe-premises immunity

---

[6] Insofar as it is inconsistent with this conclusion, the state Court of Appeal's decision in *Shipman v. Boething Treeland Farms, Inc., supra*, 77 Cal.App.4th 1424, is disapproved.

granted by the first paragraph (as to dangerous conditions and structures) and the third paragraph's immunity from liability for injuries caused *by* recreational users (as to dangerous uses and activities). The words "guard . . . against a dangerous . . . activity" aptly describe a duty relating to the dangerous activity of a third party, such as a recreational user, and would be an odd choice of words to describe a duty relating to the landowner's own activities. Thus, section 846's fourth paragraph does not establish a limitation or exception for the landowner's own willful or malicious conduct. We may infer that the Legislature perceived no need for such a limitation inasmuch as it had not provided a corresponding immunity for activities, such as vehicle driving, conducted by the landowner or the landowner's employee.

## B.  *Legislative History*

Having concluded, based on the plain meaning of its language, that Civil Code section 846 does not bar vehicular negligence claims against landowners, it is not necessary to consider the statute's legislative history. Our review of that legislative history reveals, however, that it is consistent with our conclusion.

As this court observed in *Ornelas*, the legislative history for Civil Code section 846 is sparse and, at least on some points, inconclusive. (*Ornelas*, *supra*, 4 Cal.4th 1095, 1105–1106, fn. 8.) "A letter from the bill's Senate sponsor to the Governor urging favorable consideration suggests that it would encourage owners who might otherwise fear liability to grant access to their property." (*Id.* at p. 1106, fn. 8.) As this court has noted, however, in crafting legislation that would prevent the closure of private lands to recreational users because of landowners' liability concerns, the California Legislature sought to strike a fair balance between the interests of private landowners and those of recreational users. (*Id.* at p. 1108.) Our conclusion here, that section 846 encompasses premises liability claims but not vehicular negligence claims, furthers this legislative objective of balancing the respective interests of landowners and persons using their lands for recreation. Construing section 846 to confer an immunity from liability for injuries caused by the negligent conduct of the landowner or the landowner's employees might well discourage recreational use of the land, thereby defeating the underlying statutory purpose. Moreover, the Legislature might well have concluded that it is fair to hold both landowners and recreational users to essentially the same standard of care. Thus, if the landowner and a recreational user are engaged in the same activity on the land at the same time—whether hunting, bicycle riding, or driving a vehicle—each should owe the same duty of care to the other and each should be subject to the same liability if a breach of that duty results in personal injury to the other. At the same time, the landowner is relieved of liability for recreational user injuries

when the theory of liability depends on a duty that the law otherwise imposes specifically and uniquely on landowners.

The summary prepared by the Legislative Counsel for the original 1963 bill states that the bill "provides that an owner of an estate in real property is not liable for injuries to people who enter upon his land for various recreational purposes" (Legis. Counsel, Rep. on Sen. Bill No. 639 (1963 Reg. Sess.) July 5, 1963) and this wording is repeated in some other legislative history documents relating to that bill. These statements might be read as suggesting that Civil Code section 846 confers a blanket immunity. But if the Legislature had actually intended such a broad and unqualified immunity, it could have used the Legislative Counsel's broad and unqualified wording. That it chose rather different wording suggests that it intended a narrower and more focused immunity, and the language of the statute itself is the most reliable guide to legislative intent.

We note also that legislative history materials from the 1980 amendment that extended Civil Code section 846's protections to owners holding nonpossessory interests in land consistently summarize the section as providing "that an owner of any estate in real property owes no duty of care *to keep the premises safe* for entry or use by others for any recreational purpose." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 1966 (1979–1980 Reg. Sess.) as amended Feb. 11, 1980, p. 1, italics added.) Likewise, the debate surrounding the 1980 amendment to section 846 focused on whether nonpossessory landowners should be given an incentive to "protect the public from *dangerous conditions* on the land." (See, e.g., Assem. Com. on Judiciary, Analysis of Assem. Bill No. 1966 (1979–1980 Reg. Sess.) as amended Feb. 11, 1980, p. 3, italics added.) These statements support our construction of section 846 as barring only premises liability claims arising from property-related duties.

## C.  *Public Policy Considerations*

Although our construction of Civil Code section 846 is not based on public policy considerations, we review those considerations briefly to ensure that the construction we adopt will not produce manifestly adverse effects that the Legislature could not have intended when it enacted that law. The state has a strong interest in promoting the safe driving of motor vehicles and in preventing or minimizing personal injuries resulting from motor vehicle accidents. Our construction furthers these interests by encouraging property owners and their employees to drive safely on their lands so as to reduce collisions with, and injuries to, persons engaged in recreational activities on those lands.

Regarding activities other than motor vehicle driving, our construction, as previously mentioned, has the effect of holding landowners and those who

enter their property for recreational purposes to essentially the same standard of care. The landowner's status as landowner does not result in the imposition of additional duties or a higher standard of care, but neither does it relieve the landowner from the general duty imposed on all, landowner and recreational user of land alike, to exercise due care while performing activities that could result in injuries to others.

Attempting to demonstrate the "artificiality of the distinction" (dis. opn., *post*, at p. 91) that we draw here between negligence consisting of a failure to remedy a dangerous physical condition and negligence in the performance of an activity, the dissent relies heavily on a series of hypothetical scenarios. In constructing these examples, the dissent avoids mention of any factual detail that would establish the landowner's actual negligence, thereby creating a false impression that if Civil Code section 846's liability shield is not extended to cover these situations, landowners may be held liable for conduct that is entirely blameless. Moreover, the dissent nowhere acknowledges the arbitrary distinctions that would determine liability under the construction of section 846 that it proposes.

An example illustrates the latter point. A landowner is visited by his brother, who lives in another state, and the two travel in the same car to a tavern where they spend the afternoon talking and consuming alcoholic beverages. On their return to the landowner's property, the car goes out of control, as a result of excessive speed and the driver's inebriation, while making the turn from the public highway onto the landowner's property. The car strikes a recreational hiker, who is seriously injured. Under the dissent's proposed interpretation of Civil Code section 846, if the negligent driver is the landowner, he is liable for the hiker's injuries if the hiker happens to be standing beside the public road, off of the landowner's property, but section 846 shields the owner from liability if the hiker is standing just a few feet away on the landowner's property. And if the negligent driver happens to be the landowner's brother, rather than the landowner, the brother is liable for the hiker's injuries regardless of where the hiker happens to be standing when struck, because Civil Code section 846's liability shield applies only to persons having an interest in the land. Under the construction we adopt here, of course, the identity of the driver and the hiker's exact location at the time of injury are not relevant in making the liability determination.

## IV

Having concluded that Civil Code section 846's safe-premises immunity clause does not encompass vehicular negligence claims, we consider and reject the arguments that defendant United States offers against this statutory construction.

To support its position that Civil Code section 846 precludes recovery against a landowner for an injury caused by vehicular negligence, defendant United States seizes on language in this court's decision in *Ornelas* characterizing section 846 as "extremely broad" (*Ornelas, supra,* 4 Cal.4th 1095, 1105). But *Ornelas* dealt with an injury caused by farm equipment being stored on the premises, a hazardous *condition of the property.* Nowhere in this court's discussion of the scope of section 846 did this court consider unsafe *activities* undertaken by landowners or their employees. More specifically, at no point did this court in *Ornelas,* or in any other case before this one, address whether section 846 immunity would extend to cover affirmative acts of negligence on the part of landowners or their employees.

Viewed in context, the "extremely broad" language in *Ornelas* refers to the *type* of interest held by the landowner (possessory or nonpossessory), the nature of the property (developed or undeveloped, urban or rural, natural or altered), and the sorts of activities considered "recreational" (including even the spontaneous, unsupervised play of young children). (*Ornelas, supra,* 4 Cal.4th 1095, 1100–1102, 1105–1108.) Civil Code section 846 is indeed broad in each of those respects. *Ornelas* made this point to explain why the statute applies to protect landowners from liability even if the land at issue is not well suited to recreational pursuits. (*Ornelas, supra,* at p. 1105.) This court stated that, "assuming the requisite 'interest' in land, the plain language of the statute admits of *no* exceptions, either for property 'unsuitable' for recreational use or otherwise." (*Id.* at p. 1105.)

Defendant United States relies also on this language in *Ornelas*: "The landowner's duty to the nonpaying, uninvited recreational user is, in essence, that owed a trespasser under the common law as it existed prior to *Rowland* v. *Christian* [(1968)] 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561]; i.e., absent willful or malicious misconduct the landowner is immune from liability for ordinary negligence." (*Ornelas, supra,* 4 Cal.4th 1095, 1100.) Because this language was unnecessary to the decision in *Ornelas,* it was dictum, and thus lacking in precedential force (*City of Hope National Medical Center v. Genentech, Inc.* (2008) 43 Cal.4th 375, 390 [75 Cal.Rptr.3d 333, 181 P.3d 142]), particularly in light of the facts of *Ornelas,* which involved a premises liability claim based on the allegedly hazardous condition of the property (see *Brown v. Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 734–735 [257 Cal.Rptr. 708, 771 P.2d 406] [stating that a decision's positive authority is limited by the facts presented by the case]). Indeed, until now every Civil Code section 846 case this court has decided has involved an injury arising out of the condition of privately owned property, rather than an injury arising out of an allegedly unsafe activity being conducted on the property. (See *Prince v. Pacific Gas & Electric Co.* (2009) 45 Cal.4th 1151 [90 Cal.Rptr.3d 732, 202 P.3d 1115] [child injured while attempting to dislodge a kite from a power line on defendant's property]; *Lewis v. Superior Court* (1999) 19

Cal.4th 1232 [82 Cal.Rptr.2d 85, 970 P.2d 872] [plaintiff injured when horse he was riding stepped into a rut on defendant's private road]; *Hubbard v. Brown* (1990) 50 Cal.3d 189 [266 Cal.Rptr. 491, 785 P.2d 1183] [plaintiff injured when he ran his motorcycle into a fence on defendant's property]; *Delta Farms Reclamation Dist. v. Superior Court* (1983) 33 Cal.3d 699 [190 Cal.Rptr. 494, 660 P.2d 1168] [two teenage girls drowned in canal owned by defendant].)

Furthermore, it appears that the quoted *Ornelas* language on which defendant United States relies is an inaccurate or at least incomplete description of a landowner's duty to a trespasser under the common law as it existed in California before *Rowland v. Christian, supra,* 69 Cal.2d 108. As described by this court in *Rowland,* the general rule under the common law was that trespassers are "obliged to take the premises as they find them *insofar as any alleged defective condition thereon may exist,*" and that "the possessor of the land owe[d] them only the duty of refraining from wanton or willful injury." (*Rowland, supra,* 69 Cal.2d at p. 114, italics added.) Twelve years earlier, this court had given this somewhat more nuanced description of existing California law: "[I]n cases involving injury resulting from active conduct, as distinguished from condition of the premises, the landowner or possessor may be liable for failure to exercise ordinary care toward a licensee whose presence on the land is known or should reasonably be known to the owner or possessor." (*Oettinger v. Stewart* (1944) 24 Cal.2d 133, 138 [148 P.2d 19].)

Although *Oettinger* involved a licensee or "business visitor" rather than a trespasser, the court implied that, at least under some circumstances, a landowner, while engaged in "active conduct," was obliged to exercise reasonable care toward a trespasser if the landowner knew that the trespasser was present, or had reason to anticipate that the trespasser would be present, in the area where the injury occurred. (*Oettinger v. Stewart, supra,* 24 Cal.2d at pp. 138–139.) Among the cases this court cited as having recognized the above described landowner duty was *Hamakawa v. Crescent Wharf etc. Co.* (1935) 4 Cal.2d 499 [50 P.2d 803], a case involving a trespasser. There, this court had held that the defendant, who was in control of the premises that the plaintiff had entered without permission, owed a duty "to conduct its activities with reasonable care for [the plaintiff's] safety" if, but only if, the defendant "knew or from facts within its knowledge should have known of the plaintiff's presence." (*Hamakawa, supra,* at pp. 501–502.) This description of the duty that a landowner owes to a trespasser at common law is consistent with section 336 of the Restatement Second of Torts, which states: "A possessor of land who knows or has reason to know of the presence of another who is trespassing on the land is subject to liability for physical harm thereafter caused to the trespasser by the possessor's failure to carry on his activities upon the land with reasonable care for the trespasser's safety."

Of course, Civil Code section 846 makes a plaintiff's common law status, whether invitee or trespasser, irrelevant to the question of the defendant landowner's liability. What we decide today is whether section 846 shields a landowner from liability for a recreational user's injury caused by the negligent driving of the landowner's employee. The dictum in this court's *Ornelas* decision regarding a landowner's duty to a trespasser under earlier common law (*Ornelas, supra*, 4 Cal.4th 1095, 1100) offers little instruction on that issue. This court had no need in *Ornelas* to consider negligence unrelated to the upkeep of the premises, as *Ornelas* involved the sort of injury typically arising under section 846—an injury resulting from the condition of the land.

## V

In response to the Ninth Circuit's request for clarification of California law, we conclude that Civil Code section 846 does not shield a landowner from liability to a recreational user for personal injury resulting from the negligent driving of the landowner's employee acting within the course and scope of employment.

George, C. J., Werdegar, J., and Moreno, J., concurred.

**BAXTER, J., Dissenting.**—I respectfully dissent. It is clear to me that under Civil Code section 846,[1] the so-called recreational use immunity statute, the owner of an estate in real property is not liable for any injury suffered, as the result of the owner's mere ordinary negligence, by one who is on the property, without payment or invitation, for recreational purposes. The owner's statutory immunity for ordinary negligence under such circumstances applies not only to injuries caused by *physical conditions* on the property, but also to those caused by the owner's *uses of,* and *activities on,* the property, such as the negligent driving at issue here. As I shall explain, this result is compelled by a fair reading of the statutory language and by the policies underlying the immunity, as we have previously described them.

At the outset, I share a natural sympathy for the injured plaintiff in this case. It certainly seems that a bicyclist injured in a traffic accident on a public highway should be able to recover from the employer of a negligent driver who struck him while engaged in the course and scope of the employment. Unfortunately, however, the accident at issue here involved a federal employee driving on federal land. For better or worse, Congress has cloaked the federal government in California with any tort immunity a private person, including a private landowner, would have under state law, such as the

---

[1] All further unlabeled statutory references are to the Civil Code.

recreational use immunity conferred by section 846. (28 U.S.C. § 1346(b)(1).) Moreover, though the government actively promotes the free public recreational use of its national forest lands and roads, case law has consistently held that it does not thereby "expressly invite[]" members of the public onto its property, so as to come within an express statutory exception to immunity. (§ 846, 4th par.)[2] These anomalous, and perhaps counterintuitive, circumstances should not influence our resolution of the issue the Ninth Circuit has asked us to decide here. We should resist the temptation to make bad law from bad facts.

Instead, we must focus on how section 846 properly applies to the millions of individual California property owners—agricultural, industrial, commercial, and residential—who face exposure to tort liability when persons who have entered private land for recreational purposes, often without the owners' permission, come into contact with the owners' normal activities on their property. For multiple reasons, the majority reaches the wrong interpretation of section 846 as applied to these owners.

The Legislature's primary purpose in adopting section 846 was to encourage the owners of real property to allow recreational use of the property by others *without fear* that if an owner's mere negligence on the premises injured such a user, the owner would face tort liability. As discussed below, nothing in the legislative history of section 846, or in our case law directly interpreting this statute, manifests an intent to immunize only static physical "conditions" on the property, while leaving the owner fully exposed if his or her normal *activities* on the property injure a person who has entered, without payment or invitation, for recreational purposes. Though the majority insists otherwise, there is no readily apparent reason why the Legislature would make such a distinction. Landowners do not simply maintain their property, they use it. If the law seeks to encourage such owners to allow nonpaying, uninvited strangers to enter and use their land for recreational purposes without fear of personal injury liability, both "conditions" and "use" immunity are equally justified.

Of course, as this court has indicated, the statute also reflects a policy that it is unfair to subject a landowner to tort liability when nonpaying, uninvited

---

[2] See, e.g., *Mattice v. U.S.* (9th Cir. 1992) 969 F.2d 818, 820–821 (§ 846 applied to paved secondary access road in national park); *Termini v. U.S.* (9th Cir. 1992) 963 F.2d 1264, 1265–1266 (§ 846 applied to Forest Service road in Angeles National Forest); *Phillips v. U.S.* (9th Cir. 1979) 590 F.2d 297, 299–300 (Forest Service promotional literature was not "express invitation" to enter national forest); see also *Ravell v. U.S.* (9th Cir. 1994) 22 F.3d 960, 962–963 (invitation to general public to attend air show on military base was not "express[] invit[ation]" to injured spectator); *Johnson v. Unocal Corp.* (1993) 21 Cal.App.4th 310, 317 [26 Cal.Rptr.2d 148] (exemption from § 846 immunity requires "direct, personal" invitation to injured person).

strangers enter *against the landowner's will* for recreational purposes. This was a primary ground for our holding that section 846 applies even to land that is unsuitable for recreation, and even where the landowner seeks to prevent recreational entry and use by others. In reaching this conclusion, we stressed that section 846 sets forth only two requirements for immunity: "(1) the defendant must be the owner of an 'estate or any other interest in real property, whether possessory or nonpossessory'; and (2) the *plaintiff's injury must result from* the 'entry or use [of the "premises"] for any recreational purpose.' (§ 846.)" (*Ornelas v. Randolph* (1993) 4 Cal.4th 1095, 1100 [17 Cal.Rptr.2d 594, 847 P.2d 560], italics added (*Ornelas*).)

As we explained in *Ornelas*, the Legislature "could reasonably determine that a landowner—any landowner—should not in fairness be held liable for *injuries sustained* by a trespasser from the recreational use of the owner's property." (*Ornelas, supra*, 4 Cal.4th at p. 1105, italics added.) Indeed, we noted, the Legislature could recognize the "evident" injustice of subjecting a landowner who seeks to prevent recreational entry to greater liability than one who permits such entry. (*Id.*, at p. 1107.) In sum, we indicated, the statute's purpose is to ensure that "[t]he landowner's duty to the nonpaying, uninvited recreational user is, in essence, that owed a trespasser under the common law as it existed prior to *Rowland* v. *Christian* [(1968)] 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561]; *i.e., absent willful or malicious misconduct the landowner is immune from liability* [to a recreational user] *for ordinary negligence.* [Citations.]" (*Id.*, at p. 1100, italics added; see also Rest.2d Torts, § 333, subd. (b) [under traditional common law rule, possessor of land is not liable to trespassers for failure to exercise due care *either* to put the land in a reasonably safe condition *or "to carry on his activities* so as not to endanger them" (italics added)].)[3]

Land may be unsuitable for recreation, and the owner may attempt to prevent recreational trespassing, not only because of dangerous physical conditions of the land itself, but because the activities the owner is conducting on the property—whether industrial, agricultural, commercial, residential, or even recreational—simply make it incompatible with recreational use by outsiders. No reason appears why those activities, if not willful or malicious, should nonetheless expose the owner to tort liability when a trespasser who enters the land for recreational purposes is injured.

---

[3] The majority insists that, in expressing this principle, our *Ornelas* opinion provided an "inaccurate or at least incomplete" description of pre-*Rowland* California law. (Maj. opn., *ante*, at p. 86.) This law, the majority asserts, had developed nuances that acknowledged a landowner's duty to exercise due care in " 'active conduct' " toward a trespasser whose presence was, or reasonably should have been, known. (*Ibid.*; see also Rest.2d Torts, *supra*, § 336.) The point is of little moment. The simple fact is that, in *Ornelas*, we discerned a legislative intent, by the adoption of section 846, to absolve a landowner of any duty to avoid negligent "conduct" toward a recreational trespasser.

Despite all this, the majority concludes that section 846's basic immunity extends only to the physical condition of the land itself, not to *uses* or *activities* on the land by the owner, such as the operation of a motor vehicle by the owner (or the owner's employee). To support its conclusion, the majority first points to features of the statutory language. However, I respectfully submit that the majority's parsing of the statute does not withstand scrutiny. To put my views in context, I briefly review the statutory terms.

For our purposes, the significant portions of section 846 are contained in the first, third, and fourth paragraphs. The first paragraph provides in pertinent part that one with a possessory interest in real property "owes no duty of care to *keep the premises safe* for entry or use by others for any recreational purpose," or to "*give any warning* [to such recreational entrants or users] of hazardous conditions, *uses of*, structures, *or activities* on such premises." (§ 846, italics added.)

The third paragraph says that a landowner who gives permission to another for recreational entry and use does not thereby (a) warrant "that the premises are safe for such purpose," (b) accord the permitted person "the legal status of an invitee or licensee *to whom a duty of care* is owed, or (c) assume responsibility for or incur liability for any injury . . . *caused by any act of such person* . . . ." (§ 846, italics added.)

Finally, the fourth paragraph states, inter alia, that section 846 "does not limit the liability which otherwise exists (a) for *willful or malicious* failure to *guard or warn against* a dangerous condition, *use*, structure or *activity*." (§ 846, italics added.)

When all is said and done, the majority relies almost exclusively on two aspects of the first paragraph. First, the majority focuses upon the phrase "keep the premises safe." The majority insists this phrase conjures up the notion of "premises *liability*," a term of art generally associated with a landowner's "property-based" duty to maintain the land and buildings themselves in a reasonably safe condition. (Maj. opn., *ante*, at p. 79, italics added.) The Legislature, the majority assumes, must have so understood when it chose the statutory language. This phrase, the majority insists, does not extend to the owner's negligent day-to-day activity unrelated to property maintenance, such as careless operation of a vehicle, even though the negligent conduct occurs on his or her own property and causes injury to a recreational user.

I am not persuaded. In the first place, there is no hard-and-fast rule that "premises liability"—the liability exposure of a possessor of land to persons injured thereon—is limited to what the majority deems the "property-based

duties" (maj. opn., *ante*, at pp. 80–81) of physical care, maintenance, and repair. Generally, " '[t]he proper test to be applied to the liability of the possessor of land . . . is whether in the management of his property he has acted as a reasonable man in view of the probability of injury to others . . . .' " (*Alcaraz v. Vece* (1997) 14 Cal.4th 1149, 1156 [60 Cal.Rptr.2d 448, 929 P.2d 1239], quoting *Rowland v. Christian, supra,* 69 Cal.2d 108, 119.) Nothing in that formulation necessarily distinguishes between dangers arising from mere negligent property maintenance by the possessor, on the one hand, and dangers arising from activities the possessor or others are conducting on the property, on the other. (See, e.g., *Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 674 [25 Cal.Rptr.2d 137, 863 P.2d 207] [duty of landlord to tenant or patron to protect against foreseeable criminal activity on the property]; *Austin v. Riverside Portland Cement Co.* (1955) 44 Cal.2d 225, 233 [282 P.2d 69] [possessor's duty to warn contractor's employees of danger posed by operation of crane near live power lines].)

In any event, the Legislature did not use the term of art "premises liability," as it might easily have done. Instead, the statute employs the broader phrase "keep the premises safe." This phrase reasonably encompasses all failures to exercise due care that render the "premises" unsafe for recreational use by uninvited, nonpaying outsiders. Such failures may as easily and commonly involve the owner's active conduct on the property, and the day-to-day use the owner makes of it, as they do static physical conditions on the land. As indicated above, no logical reason appears why the phrase "keep the premises safe" should provide immunity only for one, and not for the others.

The following examples illustrate the artificiality of the distinction the majority proposes:

A salvage yard, surrounded by a fence posted with "customers only" and "no children" signs, is strewn with carelessly heaped piles of parts and scrap metal recovered from junked vehicles. Attracted by the piles, two neighborhood teenagers, X and Y, enter for purposes of amusing themselves. X scrambles onto one of the piles. His weight causes it to shift, and he is partially buried in debris, causing him injury. Meanwhile, Y's attention is diverted to an auto crushing machine, which is operating nearby. Y accidentally places his hand in the path of the crushing mechanism. The operator fails to shut off the machine in time, and Y's arm is seriously mangled. Under the majority's proposed holding, the salvage yard owner is immune from liability to X, but is liable for the negligent injury caused to Y.

Similarly, a wheat farmer has fenced his fields and posted them with "no trespassing" signs. During the harvest season, three bored adolescents who

live nearby come onto the property to see what recreational opportunities might present themselves. One of the adolescents, C, enters a rarely used barn, which the farmer has allowed to fall into disrepair. C climbs up into the hayloft and falls through the rotten structure, injuring himself. Meanwhile, C's companions, D and E, play a form of "tag" in the farmer's wheatfields, using the tall, ripe summer wheat as cover. While D is hiding, the farmer, harvesting his wheat with a combine, accidentally runs over D's leg, causing serious injury. Under the majority's analysis, the farmer is not liable to C, but is fully exposed to liability to D.

Finally, a landowner, A, has a rural home with substantial acreage. On a remote portion of his property, he has constructed, for his own recreational use, a dirt bike course that includes moguls, blind curves, and water hazards. The owner has fenced off his land to discourage entry by strangers. He is familiar with the challenges the course presents, and, because of his efforts to deter outsiders, he assumes he will encounter no other riders. Hence, to maximize his fun, A rides at the highest speed the course will accommodate. While he is doing so, two other dirt bikers, B and C, negotiate the fence, enter the property with their vehicles, and begin riding on the course. B rounds a blind curve, unaware of the hidden water hazard just beyond. He crashes into the water, and is injured. Moments later, C speeds through the same curve, only to see A bearing down on him. The bikes ridden by A and C collide, injuring C. Under the majority's narrow construction of "keep the premises safe," A is immune from liability for B's injury, but is fully exposed to liability for the injury caused to C.

Section 846's immunity for failure to "keep the premises safe" does not, by its terms, admit of such arbitrary distinctions. Nor are they justified in light of the clear public policy implemented by the statute.[4]

The majority next observes that the first paragraph of section 846 also states an immunity for failure "to *give any warning* of hazardous conditions, *uses of*, structures, or *activities* on such premises." (Italics added.) Confronted with the fact that this phrase specifically refers to active conduct as well as physical conditions, the majority reasons that the immunity for failure to warn is simply broader than the "premises safe" immunity. Because a broad

---

[4] The majority provides its own hypothetical example in an attempt to show that section 846 might operate arbitrarily in certain circumstances if interpreted to absolve a landowner of due care toward a nonpaying, uninvited recreational user with respect to the owner's uses and activities on the property as well as physical conditions thereon. (Maj. opn., *ante*, at p. 84.) Of course, any statutory policy choice may produce arbitrary results in isolated instances. But the majority fails to persuade that the policies reflected in section 846—to encourage the availability of suitable private land for recreation while protecting the owners of unsuitable land from liability for mere negligence to recreational trespassers—are best served by its pinched construction of the statute.

construction of the "premises safe" immunity to include uses and activities would encompass failure-to-warn theories, the majority asserts, such a construction would render the separate immunity for failure to warn unnecessary and superfluous. Hence, the majority concludes, the "premises safe" immunity must apply only to physical conditions, while the broader failure-to-warn immunity extends to activities and uses as well.

For several reasons, this analysis is not convincing. In the first place, no reason appears why the Legislature would wish to immunize landowners, as against recreational users, for failing to warn about hazardous activities and uses, while holding them fully liable for the activities and uses themselves. A more logical approach would be just the opposite—immunity for hazardous activities and uses, so long as the landowner provided adequate warning to persons entering the land for recreational purposes.

Consider the following example: As all agree, the statute would immunize a farmer from negligence liability for failing to warn nonpaying, uninvited recreational entrants that he is about to spray his crops with toxic pesticides. Nonetheless, he does post prominent notices of the imminent spraying at numerous locations on the fence around his land. Notwithstanding these warnings, trespassers climb through the fence and enter the property to hunt pheasant. Satisfied that the warnings he provided would deter recreational entrants, the farmer negligently fails to notice the hunters' presence, and he proceeds with the spraying operation. Several of the hunters suffer injurious reactions. Under the majority's interpretation of section 846, the farmer's *act* of spraying exposes him to liability, even though he provided clear warnings, *and even though he would have been immune from liability for his negligent failure to do so*. It is difficult to conclude, as a matter of common sense, that the Legislature intended such a result.

Moreover, contrary to the majority's assertion, it is simply not true that if the "premises safe" immunity applies to uses and activities as well as physical conditions, the failure-to-warn immunity becomes superfluous. On the contrary, separate treatment of the two immunities, as applied to both static physical conditions and active conduct, is rational and logical, because the duties to which these immunities relate are themselves often separate. Situations may arise where due care could be satisfied either by directly reducing, avoiding, or eliminating dangers arising from conditions or activities on one's property—i.e., "keep[ing] the premises safe"—or by giving adequate warning of the dangers. In some cases, where due care cannot make conditions or activities on the premises safe—such as those arising from inherently or unavoidably dangerous agricultural or industrial operations— due care, where such a duty is owed, may still require the landowner to warn potential entrants of these dangers.

Ample reason thus exists to absolve a landowner of negligence liability to an injured recreational user whether a duty would otherwise arise to *eliminate* dangerous conditions and activities, or simply to *warn* of them. In my view, section 846 does just that.

If there were any doubt on this point, the fourth paragraph of section 846 resolves it. As indicated above, this paragraph declares in pertinent part that the statute "does not limit the liability which otherwise exists . . . for [a landowner's] *willful or malicious* failure to *guard or warn* against a dangerous condition, *use*, structure *or activity* . . . ." (Italics added.) Two aspects of this provision unambiguously refute the majority's construction of the statutory immunity.

First, the paragraph evidences the Legislature's intent to deal separately and equally with the respective duties to "warn against," and to "guard . . . against," dangers on the property, whether those dangers arise from "condition[s]" and "structure[s]," or from "activit[ies]" and "use[s]." (§ 846, 4th par.) Insofar as the paragraph withdraws or withholds immunity for landowners' "willful or malicious" acts or omissions that injure recreational users, it does so across the board, for failures both to "guard . . . against," and to "warn against," injury-causing dangers, stemming either from physical conditions, or from the owners' uses or activities.

As so worded, the fourth paragraph thus clarifies the scope and extent of the first paragraph's immunity. The fourth paragraph makes clear that there is no immunity if the failure to "guard . . . against," or to "warn against," dangerous "condition[s], use[s], structure[s] or activit[ies]" was "willful or malicious." But the statute's need to specify the broad range of circumstances in which immunity is *not* provided obviously arises because the statute *does* otherwise provide immunity under the same circumstances for *merely negligent* acts or omissions. The paragraph clearly implies that its exception from immunity for "willful or malicious" conduct is coextensive with the immunity for conduct that is merely negligent. Since the exception applies to a failure to "guard . . . against" dangerous "use[s]" and "activit[ies]" as well as hazardous physical conditions, so must the immunity. (§ 846, 4th par.)

Thus, the most natural way to read the statute is that, under the first paragraph, the immunity extends to conditions, activities, and uses, except, under the fourth paragraph, those that are "willful or malicious." Under this construction, the first paragraph's phrase "keep the premises safe" is simply an analog of the fourth paragraph's phrase "guard . . . against a dangerous condition, use, structure or activity."

The majority suggests the fourth paragraph's withdrawal of immunity for "willful or malicious" failure to "guard . . . against" "use[s]" and "activit[ies]" may properly be read as referring only to the *third* paragraph, which specifies that a landowner who gives permission to another person to enter for recreational purposes does not thereby "assume responsibility for or incur liability for any injury . . . caused by any *act* of *such person*." (§ 846, 3d par., italics added.) Because the only express immunity set forth in section 846 for "act[s]" is the third-paragraph immunity for the "act[s]" of a permitted user, this line of reasoning goes, the fourth paragraph must simply mean that if the landowner has acted in a "willful or malicious" fashion, his or her immunity for the "act" of a permitted recreational user will not apply.

But this unduly narrow construction of the fourth paragraph's references to "use[s]" and "activit[ies]" finds no support in the statutory language. By its terms, the fourth paragraph's withdrawal of immunity for "willful or malicious" conduct by the landowner broadly extends to all failures to "guard or warn against a dangerous condition, use, structure or activity." (§ 846, 4th par.) Nothing in this phrase suggests it is limited to those particular "act[s]" of a *third person* to whom the landowner has given permission for recreational entry and use, though such a qualification could easily have been expressed. And, as indicated above, the broad phrasing of the fourth paragraph's *exception* to immunity clearly implies that the immunity itself also extends not only to "condition[s]" of the land, but to "use[s]" and "activit[ies]" thereon—including those of the landowner.

Indeed, it is difficult to imagine how the scenario to which the majority confines the fourth paragraph's withdrawal of immunity would ever occur. If I understand the majority's position correctly, the withdrawal of immunity for "willful or malicious" failure to "guard . . . against" "use[s]" or "activit[ies]" on the land that injured a recreational user would apply only in the almost inconceivable case where the landowner "willful[ly] or malicious[ly]" failed to prevent a recreational user, whom the landowner had permitted to enter, from injuring *another* person on the land. Such a circumstance is so unlikely in real life that it stretches credulity to believe the Legislature was focused on it.

Moreover, contrary to the majority's analysis, the *third* paragraph of section 846 supports, rather than undermines, my reading of the statute. The third paragraph states, inter alia, that merely by giving permission to enter and use the property for recreational purposes, the landowner does not thereby grant "the person to whom permission has been granted the legal status of an invitee or licensee to whom *a duty of care* is owed . . . ." (§ 846, 3d par., italics added.) The obvious purpose of this provision is to equate the statutory immunity against a permissive recreational user, who might otherwise be

entitled to greater common law protection as "an invitee or licensee," with that afforded in the case of a recreational trespasser. By using the broad, unqualified term "*a* duty of care" (*ibid.*, italics added) to describe the extent of this immunity, the statutory language strongly suggests that a landowner simply owes *no* duty of care (other than to refrain from "willful or malicious" conduct) to prevent injury to uninvited, nonpaying persons, whether trespassers or "permittee[s]," who enter and use the land for recreational purposes (*id.*, 4th par.).

The majority concedes that the legislative history of section 846 is sparse, and further acknowledges that the Legislative Counsel's summary of the original 1963 bill (bill "provides that an owner of an estate in real property is not liable for injuries to people who enter upon his land for various recreational purposes") (Legis. Counsel, Rep. on Sen. Bill No. 639 (1963 Reg. Sess.) July 5, 1963) suggests an intent to create a blanket immunity for injuries arising from a landowner's negligence. Nonetheless, the majority insists its narrower view of the intended immunity finds support in the legislative history of the 1980 amendment to section 846.

I do not agree. One example cited by the majority simply parrots the statutory phrase "keep the premises safe." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 1966 (1979–1980 Reg. Sess.) as amended Feb. 11, 1980, p. 1.) As I have indicated above, this language does not necessarily track the narrower term of art "premises *liability*." Moreover, at least some of the 1980 legislative documents, while reciting the statutory language, state interchangeably that the statute "exempts an owner of any estate in real property from liability to recreational users of his premises." (E.g., Assem. Com. on Judiciary, Bill Digest of Assem. Bill No. 1966 (1979–1980 Reg. Sess.) as amended Feb. 11, 1980, p. 2.) This broader language suggests a blanket immunity for all injuries negligently caused by a landowner to a nonpaying, uninvited person on the property for recreational purposes.

The majority suggests that if the Legislature meant to immunize a landowner against all injuries sustained by a nonpaying, uninvited recreational user of the property as the result of the landowner's negligence, it could simply have stated that rule in so many words. But given the ample indicia that the Legislature *did* intend to immunize both conditions and activities, if not "willful or malicious," its failure to set forth the rule with the grammatical exactitude the majority proposes cannot be dispositive.

The majority also speculates that by applying the immunity only to physical conditions, and not to "use[s]" and "activit[ies]," the Legislature sought to strike a reasonable balance between landowners and recreational users of land. The premise of this theory is that if the statute absolved

landowners of liability for their negligent conduct toward those on the property for recreational purposes, persons would be discouraged from using private lands for recreation, contrary to the purpose of section 846.

But there are two responses to this line of reasoning. First, as the Legislature must have understood, the greater a landowner's potential exposure to liability for injuries to nonpaying, uninvited recreational users, the greater is his or her incentive to *discourage or prohibit* such use. Second, as this court has previously made clear, section 846 also justly applies to landowners who do discourage recreational entry and use of their unsuitable property. As indicated, that unsuitability may arise as much from the owner's activities on the property that are incompatible with recreation, as from physical conditions thereon.

The majority also posits that the Legislature may have sought to place a landowner and a recreational user of the land on an equal footing, such that each owes a similar duty of care to refrain from injurious conduct when they are jointly engaged in activities on the property. The majority offers no evidence for this equal-footing theory. Moreover, as previously indicated, it flies in the face of the policies we have said underlie section 846. First, the statute seeks to encourage a landowner to permit outsiders to enter and use the land for recreational purposes, even though (1) the recreational users have no right to enter for this purpose, and (2) the owner has the absolute right to exclude them. Second, the statute seeks to protect a landowner who does exercise his or her absolute right to discourage recreational entry—perhaps because the owner's own use of the land is incompatible with safe recreation by outsiders—from unjust exposure to tort liability when an outsider nonetheless enters for purposes of recreation and is injured while on the property.

Neither of these objectives is served by placing a landowner and a recreational user who enters the land without right or permission on an equal footing with respect to their respective activities on the land. Instead, as the Legislature undoubtedly concluded, the landowner is entitled to protection for his or her own uses and activities when, as a result of the owner's mere negligence, a nonpaying, uninvited person who has entered the property for recreational purposes suffers injury.

For all these reasons, I am strongly persuaded that section 846 provides immunity both for negligent property maintenance by a landowner, and for negligent active conduct by the owner on the property, when a resulting danger causes injury to a nonpaying, uninvited person who is present for recreational purposes. I believe the majority's contrary holding seriously misconceives the legislative purpose and undermines the public policy reflected in section 846.

Accordingly, I would respond to the Ninth Circuit's request for clarification of California law by concluding that Civil Code section 846 does shield a landowner from liability to a nonpaying, uninvited recreational user for personal injury resulting from the negligent driving of the landowner's employee acting in the course and scope of employment.

Chin, J., and Corrigan, J., concurred.