Filed 7/30/14  P. v. Cabrera CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>          v.<br><br>PETER CABRERA,<br><br>    Defendant and Appellant. | F064340<br><br>(Fresno Super. Ct. No. F07908150)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  John F. Vogt, Judge.

Timothy E. Warriner, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Robert C. Nash, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

In this appeal, defendant claims he is entitled to the personal identifying information of the 12 jurors who convicted him of attempted second degree robbery.  The

trial court concluded defendant was entitled only to the information of a juror who had alleged that misconduct occurred during deliberations and the jury foreperson. The trial court indicated that if those two jurors provided information regarding other specific jurors, a further request could be filed. Defendant never filed a second request.

Based on the information defendant did obtain from the juror alleging misconduct, defendant moved for a new trial. The court denied the motion.

Defendant challenges the court's finding that he failed to establish "good cause" to begin the process of obtaining identifying information from the other 10 jurors. (See Code Civ. Proc., § 237.)[1] He also appeals the denial of motion for a new trial based on juror misconduct.

We affirm.

## FACTS

Defendant was charged with attempted second-degree robbery (Pen. Code, §§ 211, 664), personally discharging a firearm causing great bodily injury or death (Pen. Code, § 12022.53, subd. (d)) and personally inflicting great bodily injury (Pen. Code, § 12022.7, subd. (a).) (*People v. Cabrera* (May 10, 2011, F057254) [nonpub. opn.] (*Cabrera I*).)

At defendant's jury trial, there was evidence indicating he and a confederate attempted to rob a taco truck and that defendant shot the cashier in the process. (*Cabrera I*, *supra*, F057254.)[2] The jury ultimately convicted defendant of attempted second degree robbery and found the special allegations true. The issues in this appeal

---

[1] All further statutory references are to the Code of Civil Procedure, unless otherwise noted.

[2] Our recitation of the underlying facts is brief because "[t]he facts surrounding [defendant's] crimes … are not relevant to the analysis of juror misconduct claims .…" (*In re Boyette* (2013) 56 Cal.4th 866, 871.)

2.

arise from a former juror's postverdict allegations of juror misconduct during deliberations.

**Jury Deliberations and Allegations of Misconduct[3]**

"On the afternoon of September 23, 2008, the jury began the deliberations. At 4:30 p.m., the jury requested to hear certain testimony. On the morning of September 24, the court responded to the jury's first inquiry. At 11:10 a.m., the jury asked to hear additional testimony.

"At 3:10 p.m. on September 24, the jury asked to directly address the court. The foreperson stated the jury needed 'some guidance.' The court determined the jury was unable to reach a unanimous verdict on count one and that four ballots had been taken. The court asked the foreperson if there was 'any movement,' and the foreperson said there was. The court asked if it could assist the jury with some further legal instruction or testimony. The jurors privately conferred, and the foreperson asked the court to explain the definition of reasonable doubt because 'a couple of jurors are having a little difficulty understanding that exactly.' The court reinstructed the jury on reasonable doubt. Thereafter, the jury resumed deliberations. Later that afternoon, the court adjourned the deliberations for the day.

"On the morning of September 25, 2008, the jury returned [its] verdicts .… The court polled the jury and each signified the verdict of guilt and the [true] findings on the special allegations constituted their 'true, correct, personal, and unanimous verdicts.'

"After the court polled the jury, the court asked counsel, 'Is there any legal cause why I should not discharge this jury at this time?' Both counsel responded in the negative. The court then instructed the jury:

> " 'You have now completed your jury service in this case. On behalf of all the judges of the Fresno County Superior Court, everybody

---

**[3]** These facts are taken from our opinion in *Cabrera I.*

3.

here in this courtroom, I want to thank you very much for your effort, your time, and your consideration of the case.

" 'Now that the case is over, you may choose whether or not to discuss the case and your deliberations with anyone. Let me tell you some things about the rules the law puts in place for your convenience and your protection. The lawyers in this case or their representatives may now talk to you about the case, including your deliberations, your verdict, and findings. Those discussions must occur at a reasonable time and place, and only with your consent. Please immediately report to this court any unreasonable contact made without your consent. And any lawyer or representative who violates the rules of professional conduct and the standing orders of this court regarding such conduct will be in violation of this court's order and subject to sanction.

" 'I hereby order that the court's record of personal juror identification information, including names, addresses, and telephone numbers shall be sealed until further order of the court. And if in the future this court is asked to decide whether this information will be released, notice will be given to any juror whose information is involved and such juror may oppose the release of this information and ask that any hearing on the release of information shall be closed to the public, and this court will decide whether and under what conditions any information may be disclosed.'

"The court then excused and discharged the jury. At 4:15 p.m. that same day, a trial juror e-mailed Judge John F. Vogt, who presided at the trial, and stated:

" 'I voted incorrectly and against my own good judgment in the case trial People vs. Peter Cabrera in your courtroom today.

" 'I am the juror who was holding up the verdict the last two days because it had not been proven to me with the evidence presented that Peter Cabrera was guilty "beyond all reasonable doubt."

" 'This morning, Thursday, September 25th we began jury deliberations once again at approximately 9 am. My fellow jurors became instantly enraged when it became apparent I still did not believe Peter Cabrera was guilty *beyond all reasonable doubt*. Due to the very angry and what I considered hostile pressure from the other jurors (among other things going on in the deliberation room aimed at me due to my "Not Guilty" voting) I "broke" and voted "guilty."

4.

" 'In addition to the hostile/angry environment I was in among the jurors, I believe I was not thinking clearly and not able to stand the pressure to having received bad news regarding my mother[']s health at 8:30 pm last night (though I tried to and thought I was keeping my mind on the trial). After leaving the courthouse and having some time to think without the other jurors attacking me (ie, hostility based slurs, comments and physical movements/gestures by other jurors) I realized I had made an absolute mistake in how I voted.

" 'I apologize for the obvious problems I am about to cause by writing this—but I have to do "the right thing" and I apologize for letting hostile fellow jurors and outside sources interfere with my vote before the verdict was reached, given and read. With all the evidence presented to me—I clearly believe Peter Cabrera is not guilty of what he is charge [*sic*] with.' (Italics in original.)

"On January 8, 2009, appellant filed a petition for order disclosing personal juror information. In a supporting declaration, appellant's trial counsel stated:

" '[¶] … [¶]

" '3. I am informed and believe, and on that basis, declare that the court is in possession of a letter written to the court by a juror in this case. In the letter, this juror described that she believed that the defendant was innocent, but that she was pressured by other juror(s) to the point that her will was overcome[.]

" '4. Based on this letter and its contents, I am further informed and believe, and thereon alleged, that there exists sufficient cause to believe that juror misconduct may have occurred to the prejudice of the defendant, and that further research and investigation is warranted to confirm that juror misconduct occurred sufficient to act as a reasonable basis to a motion for new trial.

" '5. In order to protect the privacy and sanctity of the jurors and given the above facts, I have made no other attempts to contact the jurors.

" '6. Except through this petition, I have no way of determining the names, addresses, and phone numbers to research and investigate the reason(s) this juror felt compelled to write the court to express that she believed the defendant was not guilty notwithstanding the guilty verdict.

" '7. Further investigation and research is necessary to verify and develop facts in order to present the court with adequate information upon

5.

which to rule on a motion for new trial.' " (*Cabrera I*, *supra*, F057254, fn. omitted.)

The trial court summarily denied the motion to disclose juror information.

**Sentence**

Defendant was sentenced to "the middle term of two years on the substantive count, a consecutive three-year term on the great bodily injury allegation (Pen. Code, § 12022.7, subd. (a)), and a term of 25 years to life on the personal discharge allegation (Pen. Code, § 12022.53, subd. (d)), to run concurrent to the term imposed on the substantive count." (*Cabrera I*, *supra*, F057254.)

**_Cabrera I_**

Defendant appealed the judgment, which we conditionally reversed in *Cabrera I*. (*Cabrera I*, *supra*, F057254.) We determined the trial court erred in summarily denying the request for disclosure of juror information. (*Ibid.*) We remanded for the superior court to "set the matter for a hearing under Code of Civil Procedure section 237." (*Ibid.*) We acknowledged the possibility defendant might thereafter file a motion for new trial, but expressly declined to address the merits of any such motion. (*Ibid.*)

**Proceedings on Remand**

*September 30, 2011, Hearing*

On remand, defendant again petitioned the superior court for juror information under section 237. Defendant sought disclosure of all jurors' identifying information, not just that of the complaining juror. The basis for requesting disclosure was the complaining juror's e-mail which, "described hostility based slurs, comments and physical movements /gestures made by other jurors as well as other aggressions."

The superior court held a hearing on the petition to disclose juror information. At the hearing, the superior court said:

> "Clearly, we need to give her notice of the hearing that we will conduct on whether we will release her information. The question is, who else do we involve in this? And after giving it considerable thought, my feeling is that

6.

not only do we need to hear from this particular juror, but I think we need to call upon the foreperson as well and give him or her … notice of the fact that we would like to talk to him about this.

"I don't believe it's appropriate nor necessary to involve any other jurors, since we don't have anybody specifically identified. I think what we need to find out just from this particular juror what they claim happened and have the input of the foreperson to confirm, corroborate, dispute or whatever the issue would be. But my intention here is to take the first step, which I understand is the direction of the Court of Appeal and that is to send notice to these affected jurors that there is going to be a request to release their information and conduct further investigation about the deliberations."

Shortly thereafter, the court stated:

"But my intention here is to get to the bottom of it directly, and that is to speak to this juror and to the foreperson. And if it involves further notices to be sent out, then that will have to be a separate step .…"

In a similar vein, the court later said:

"And … it seems to me to be an effective way to do it is to … also try to get information from the foreperson. And if there is further disclosures, then we can go into the further possible affected jurors.…"

*December 2, 2011, Hearing*

The court sent notice to the complaining juror and the foreperson pursuant to section 237, subdivision (c). The notice informed the jurors that their information would be released to counsel if they did not respond to the notice and did not attend the court hearing.

The complaining juror responded to the notice and consented to the release of her name and phone number to defense counsel and the trial judge only. The foreperson did not respond to the notice.

The superior court ordered the juror's personal identifying information be released to defense counsel and the prosecution. The court also told defense counsel the following:

7.

"You have a specific time frame in which to file a motion for ultimate release. Now, procedurally, that does not bar you from filing a further petition under [section] 237 to seek release of other juror information. My prior ruling on your [section] 237 petition, and in light of the guidance provided by the Court of Appeal is to determine, first of all, you had made a prima facie case, but I made a determination at that time the affected jurors, for purposes of disclosure, would be the specific juror who registered the communication, and the foreperson, who would be responsible for monitoring and presiding over all the deliberations. There is no prima facie case based on the statement of the one particular juror that anybody else in particular was involved. Somebody was. The foreperson, I ruled, would be the person to contact about that information. So I can't give you advice on what to do here, here. What I'm saying is it doesn't bar you from intermediate steps. There is always another further [section] 237 petition that could be filed, if that is necessary, and I would need to make a determination under [section] 237 whether you have made a prima facie case for … release of other juror information. If that is done, then obviously, it would have an effect on the timetables for other motions."

**Motions for New Trial**

On December 20, 2011, defendant filed a motion for new trial based on juror misconduct. On January 18, 2012, defendant filed a motion for new trial based on newly discovered evidence.

*Complaining Juror's Declaration*

In support of one of the motions for a new trial, defendant produced a declaration from the complaining juror.

The declaration described a male juror whose "demeanor" and "loud sighing noises he made as he paced back and forth" led the complaining juror to believe he was "upset with me." The male juror "threw his backpack and it landed right behind my chair, barely missing me." The complaining juror "felt this was a direct physical threat."

Additionally, the declaration recounted that the "foreperson told me that I could speak and then the rest of the jurors could tell me why I was wrong." The foreperson also allegedly said, "This [deliberations] [*sic*] needs to end now!" The declaration said, "I thought the foreperson was responsible for the mediation [*sic*], I remember this as part

8.

of what the judge instructed. Therefore, I assumed if there were any problems, such as this sort of threatening behavior, the foreperson would inform the judge."

When the complaining juror suggested the jury consider and discuss an expert's testimony, she was called a "defense whore" in a "loud and angry voice."

Another juror allegedly said, "They're all gang members and need to be put away in prison!" One juror said, "This has got to end because I have reservations in Pismo and would stand to lose a lot of money if I don't make this trip." Another juror said she had a hair appointment and could not miss it.

The complaining juror said, "I gave in and voted with the others, fearing what would happen to me … emotionally and physically if I did not."

*Foreperson's Declaration*

The district attorney opposed the motion and produced a declaration from the jury foreperson. The foreperson declared he or she never witnessed any "conduct that could be perceived as a threat," throwing of any objects, or any other inappropriate activity. The foreperson also declared he or she never heard any verbal threats, derogatory comments about any witnesses, discussion of race, attempts by jurors to "close deliberations in order to leave due to other appointments or plans," or any other inappropriate statements.

The foreperson did recall that one juror wanted to leave "due to frustration." That juror "did not disrupt the deliberations," and the jury continued to deliberate thereafter.

The court denied both of defendant's motions for new trial. Defendant never filed a second section 237 petition seeking disclosure of additional jurors' identifying information.

## DISCUSSION

### I. THE TRIAL COURT DID NOT ERR IN ITS RULING ON DEFENDANT'S SECTION 237 PETITION

Defendant claims the court abused its discretion in limiting the release of juror

9.

information to only two jurors.  We disagree.

Section 237

Generally, the personal identifying information of criminal trial jurors are sealed upon the recording of the verdict.  (§ 237, subd. (a)(2).)  However, any person may petition the court to release juror information.  (§ 237, subd. (b).)  The petition must be supported by a declaration "that includes facts sufficient to establish good cause for the release.…"  (§ 237, subd. (b).)  If the petition and supporting declaration "establish a prima facie showing of good cause for the release" of juror information, then the court "shall set the matter for hearing" unless "there is a showing on the record of facts that establish a compelling interest against disclosure."  (§ 237, subd. (b).)

If the matter is set for hearing, the court must give notice to "each affected juror." (§ 237, subd. (c).)  Any affected juror may protest the granting of the petition.  (*Ibid*.)

After the hearing, the court "shall" release the juror's information unless the court sustains the former juror's protest.  (§ 237, subd. (d).)  The court must sustain the juror's protest if (1) the petitioner fails to show good cause, (2) the record establishes a compelling interest against disclosure as defined by statute, or (3) the juror is unwilling to be contacted by petitioner.  (*Ibid*.)

*Cabrera I* Did Not Resolve the Issue Before Us

As a threshold matter, defendant argues that in *Cabrera I* we held that "a prima facie case had been shown" and therefore the superior court was required to notify all trial jurors under section 237.  However, in *Cabrera I*, we only held that defendant had made a prima facie showing of good cause *as to the complaining juror*.  Specifically, we held that defendant "satisfied his burden to obtain disclosure of the contact information *for the juror who sent the e-mail to the trial judge*."  (*Cabrera I*, *supra*, F057254, italics added.)  We then immediately noted that, on remand, the superior court "*may* consider *whether* defendant has *also* satisfied his burden for disclosure of the contact information for other jurors in this case."  (*Ibid.*, italics added.)  Thus, *Cabrera I* expressly left open

10.

the question of whether defendant could satisfy his burden in triggering the release of other jurors' information.

### A Prima Facie Showing of Good Cause as to One Juror is Not Necessarily Sufficient to Trigger the Court's Duty to Notify All Other Jurors

We reject the contention that a trial must always notify all jurors when defendant demonstrates "good cause" to release one juror's information.

In establishing the "good cause" requirement, section 237, subdivision (b) provides: "The petition shall be supported by a declaration that includes facts sufficient to establish good cause for the release of *the juror*'s personal identifying information." (§ 237, subd. (b).) The use of the singular possessive "juror's" demonstrates that a trial court is not always required to notify *all* jurors merely because defendant satisfied his or her "good cause" burden as to *one* juror.

Additionally, section 237, subdivision (c)'s notice provision requires that "each *affected* former juror" be notified. (§ 237, subd. (c), italics added.) If a "good cause" showing as to one juror necessarily triggered a duty to notify all jurors, then the word "affected" would be superfluous in the statute. We avoid construing statutes in ways that render words superfluous. (*Klein v. United States of America* (2010) 50 Cal.4th 68, 80.)

### Defendant Never Showed Good Cause to Notify Jurors Under Section 237

Next we address whether defendant made a showing of good cause as to the other 10 jurors.

Defendant's section 237 petition was based entirely on the complaining juror's e-mail. [4] The court ordered notice sent to the complaining juror and the jury foreperson.

_____

[4] On appeal, defendant also relies on the complaining juror's *declaration*, which was filed after the court ruled on the section 237 petition. Defendant argues that even if the court's ruling on the petition were correct, it was an abuse of discretion to "fail to expand notification" given the "conflict" between their two declarations. But defendant never filed another section 237 petition requesting to "expand notification." To the extent defendant believed the complaining juror's declaration provided additional

11.

At the initial hearing, the court refused to order additional notices sent because no other jurors had been "specifically identified." The court described the notices as a "first step" in "get[ting] to the bottom" of the issue and specifically acknowledged that additional notices might need to be sent in the future. At the December 2, 2011, hearing, the court reiterated that defendant was not barred "from filing a further petition under [section] 237 to seek release of other juror information." In other words, the court was appropriately indicating that it would entertain a further petition based on information obtained from the complaining juror and/or the foreperson. The court said that if such a petition was filed, it would "need to make a determination under [section] 237 whether you have made a prima facie case for … release of other juror information."

The court's approach was an eminently reasonable attempt to balance the jurors' rights to postverdict privacy and defendant's interest in obtaining information relevant to potential misconduct. By beginning the disclosure process as to the complaining juror and foreperson, the court was providing defendant the opportunity to explore allegations of misconduct. But, as the court noted, the complaining juror only specifically identified the foreperson as having acted improperly. There was no particularized showing as to any other specific jurors. And, the court noted that if information was uncovered implicating particular jurors in misconduct, it would entertain a further petition on the issue. Far from an abuse of discretion, the court's decision reflected a reasoned balance between the competing interests of defendant and the former jurors. We find no abuse of discretion.[5]

_____

information supporting disclosure of other jurors' information, he should have accepted the court's initial invitation to file another petition. He did not do so.

[5] Nor do we find any constitutional violations. Defendant's claims the court's "error" also constituted a violation of his due process rights. We find no error and thus no constitutional violation.

12.

**II.    The Court Did not Err in Denying Defendant's Motion for New Trial Based on Alleged Juror Misconduct**

The Decision of How to Resolve Conflicting Evidence Rested with Trial Court

As noted above, defendant presented a declaration from the complaining juror in support of the motion for new trial. That declaration set forth several instances of alleged misconduct. The district attorney presented the declaration of the jury foreperson. In that declaration, the jury foreperson denied witnessing any of the misconduct raised by the complaining juror. The court concluded that the foreperson had addressed and refuted "every single one" of the complaining juror's allegations of misconduct.

Defendant contends that "in trusting and relying upon the statement of the foreperson as the basis for deciding whether to notify the other jurors, the court engaged in a process that was arbitrary and capricious."

Making credibility determinations to resolve conflicts in the evidence is the trial court's job, not ours. " 'The power to judge the credibility of witnesses and to resolve conflicts in the testimony is vested in the trial court ....' [Citation.] 'It is an established principle that the credibility of witnesses and the weight to be given their testimony are matters within the *sole* province of the trier of fact ....' [Citation.] 'A trier of fact may accept such witnesses as he wishes and reject others.' [Citation.] 'Where there is conflicting testimony, reviewing courts recognize that the trier of the facts has the better opportunity to judge the credibility of witnesses. In such a case the trial court's findings of fact, to the extent that they rest upon an evaluation of credibility, should be regarded as *conclusive* on appeal.' [Citation.]" (*People v. Hamlin* (2009) 170 Cal.App.4th 1412, 1463.)

" '[T]he power to judge the credibility of witnesses to resolve conflicts in the testimony is vested in the trial court' [citation] even when the witnesses testify via declarations [citation]." (*People v. Johnson* (2013) 222 Cal.App.4th 486, 499; see also *Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711, fn. 3.)

Regardless of the level of our deference to the trial court, there were adequate grounds for crediting the foreperson's version over the complaining juror's. First, there is the general observation that " '[a] single juror who reluctantly joined in a verdict is likely to be sympathetic to the overtures of defeated parties, and to be persuadable to the view that his [or her] own consent rested upon false or impermissible considerations .…' " (*People v. Rhodes* (1989) 212 Cal.App.3d 541, 549 superseded by statute on another point as stated in *People v. Wilson* (1996) 43 Cal.App.4th 839, 852.) Moreover, the complaining juror's own version of events suggests her conclusions of intimidation may have been mistaken. The initial e-mail to the trial judge referenced "hostility based … physical movements… by other jurors." But the specifics set forth in the declaration paint an unclear picture at best. The declaration recounted that a male juror "threw his backpack and it landed right behind my chair, barely missing me." While the complaining juror "felt this was a direct physical threat," the factual description suggests the event could have been entirely benign. In sum, this is not a situation where the complaining juror's declaration was undisputed and unimpeachably convincing. It was not reversible error to credit the foreperson's declaration over the complaining juror's.[6]

### The Trial Court's Comments Regarding Jury Foreperson did not Demonstrate Impermissible Prejudging of Evidence

Defendant contends that the trial court's credibility determination was nonetheless improper because it flowed from an incorrect view of the foreperson's role in deliberations. Specifically, defendant says the court was wrong to say the foreperson was "in charge of the deliberations."

---

[6] Defendant argues the denial of his new trial motion was an "arbitrary deprivation" of a state law entitlement, in violation of his constitutional rights. Because the denial was not erroneous, it was also not an "arbitrary deprivation" of a state law entitlement.

This argument presents two issues: (1) whether the trial court's comment about the foreperson's role was incorrect and (2) whether the trial court's comment (accurate or not) demonstrated a prejudgment that the foreperson's version of events would certainly be more credible than the complaining juror's.

Defendant argues that the court's comment was wrong as a matter of law because a foreperson's "only statutory task" is to advise the court or clerk whether the jurors have agreed upon their verdict. (See § 1149.) That may be the foreperson's only *statutory* task. (See *People v. Perez* (1989) 212 Cal.App.3d 395, 402). However, the foreperson's special role in facilitating deliberations, even if nonstatutory, has long been recognized. (See *People v. Ledesma* (2006) 39 Cal.4th 641, 730; see also CALCRIM 3550 ["The foreperson should see to it that your discussions are carried on in an organized way and that everyone has a fair chance to be heard"].)

In *People v. Ledesma*, *supra*, 39 Cal.4th 641, the trial court told the jury that the foreperson had been allowed to take jury instructions home, " 'but that is because of her status as foreperson ….' " (*Id.* at p. 730.) The trial court said the foreperson " 'has a need to be perhaps better informed than anyone else as to where [certain] instructions are located within [the jury instruction] packet.' " (*Ibid*.) The Supreme Court found no error in the trial court's statements, which "merely explained that the foreperson should be in a position to assist deliberations .…" (*Ibid*.)

Thus, it is clear that jury forepersons play a special role in facilitating deliberations. But even if it were a slight overstatement to say that the foreperson is "in charge" of deliberations, the court's comments certainly do not convey the meaning defendant ascribes. Defendant contends the court's description of the foreperson's role shows that the court "assumed" that "the foreperson was a trusted and competent witness to everything that transpired during deliberations, almost as if the foreperson was a proxy for the court." Quite simply, that is not what the court said. The court indicated that if the foreperson corroborates the complaining juror's account, then "we can take it from

15.

there. And that may very well involve just sending out notices to everybody…." Notably, the court did not say that if the foreperson contradicted the complaining juror, it would automatically credit the foreperson's account because forepersons are always more credible than other jurors.

Absent compelling evidence, we will not lightly conclude a trial court impermissibly prejudged the weight of evidence before it was presented. Defendant fails to show that is what occurred here. Granted, when the competing declarations were ultimately presented, the court did choose to rely on the foreperson's declaration over the complaining juror's. But there is no evidence that reliance was improper. We assume the court's credibility determination was based on permissible factors rather than a categorical preference for the testimony of forepersons over other jurors.

Defendant also contends it was erroneous for the court to assume that "the foreperson observed everything that went on during deliberations." But here there was evidence the foreperson *was* present during the relevant events. The complaining juror's declaration recounted the alleged misconduct and then said: "I thought the foreperson was responsible for the [deliberations], I remember this as part of what the judge instructed. Therefore, I assumed if there were any problems, such as this sort of threatening behavior, the foreperson would inform the judge." This statement suggests that the complaining juror knew or had reason to believe the foreperson was aware of the alleged misconduct. Otherwise, the complaining juror would not have assumed the foreperson would inform the judge of such misconduct. Moreover, the trial court may have reasonably inferred that the foreperson was likely to have been aware of misconduct, had it occurred, because of his or her special role in assisting the deliberations.

Finally, defendant argues that the trial court, at a minimum, should have ordered an evidentiary hearing to resolve the conflicts in the two declarations. Defendant relies on *People v. Hedgecock* (1990) 51 Cal.3d 395 in making this contention. But *Hedgecock*

16.

is clear that defendants are "not entitled to such a hearing as a matter of right. Rather, such a hearing should be held only when the trial court, in its discretion, concludes that an evidentiary hearing is necessary to resolve material, disputed issues of fact." (*Id.* at p. 415.) Here, the court considered an evidentiary hearing but ultimately determined it could and would make a ruling based on the competing declarations. Thus, the court necessarily determined, in its discretion, that an evidentiary hearing was *not* necessary to resolve the material, disputed issues of fact. Under *Hedgecock*, it was free to exercise its discretion in this manner. (See *ibid.*)

## CONCLUSION

Of course, we do not know with certainty what happened during deliberations. In these situations, the truth is "hard to ascertain." (*People v. Rhodes*, *supra*, 212 Cal.App.3d at p. 549.) Our role as a reviewing court is not to detail the events that occurred during deliberations with certitude. Rather, our task is to determine whether the trial court's rulings constitute an abuse of discretion. They do not.

## DISPOSITION

The judgment is affirmed.

_____
Poochigian, J.

WE CONCUR:


_____
Levy, Acting P.J.


_____
Cornell, J.

17.