Filed 6/18/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| DONALD R. SHORTS,<br><br>Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF LOS ANGELES COUNTY,<br><br>Respondent,<br><br>THE PEOPLE OF THE STATE OF CALIFORNIA,<br><br>Real Party in Interest. | B285710<br><br>Related Appeal Pending: Supreme Court No.: S189992<br><br>(Los Angeles County Super. Ct. No. TA078911) |

ORIGINAL PROCEEDINGS in mandate. Eleanor J. Hunter, Judge. Petition granted in part.

Mary K. McComb, State Public Defender, and Andrea G. Asaro, Senior Deputy State Public Defender, for Petitioner.

No appearance for Respondent.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Joseph P. Lee and Idan Ivri, Deputy Attorneys General, for Real Party in Interest.

Penal Code section 1054.9[1] establishes a mechanism for postconviction discovery of materials "in the possession of the prosecution and law enforcement authorities to which the same defendant would have been entitled at time of trial" in cases in which a sentence of death or life in prison without the possibility of parole has been imposed. In *People v. Superior Court* (*Morales*) (2017) 2 Cal.5th 523 (*Morales*) the Supreme Court held the superior court has jurisdiction pursuant to Code of Civil Procedure section 187 to grant a motion to preserve evidence potentially discoverable under section 1054.9 during the pendency of an automatic appeal of a capital case to the Supreme Court. However, the Court warned, "An order purporting to require the preservation of materials beyond the scope of Penal Code section 1054.9 would . . . exceed the trial court's jurisdiction on a motion to preserve evidence." (*Morales*, at p. 535.)

Here, narrowly construing its authority under section 1054.9 and *Morales*, the superior court denied in part the motion to preserve evidence filed by Donald R. Shorts, whose automatic appeal following his conviction for murder and sentence to death is pending in the Supreme Court. Shorts's petition for a writ of mandate asks us to define more precisely the permissible scope of record preservation in capital cases. In particular, Shorts contends a defendant sentenced to death is entitled to an order preserving materials pertaining to prior crimes and alleged prior criminal conduct that were the subject of evidence introduced by the prosecutor at the guilt and penalty phases of his capital trial, including offenses identified in the People's notice of evidence in aggravation, not only materials

---

[1] Statutory references are to this code unless otherwise stated.

related to the specific crimes charged in the case. Shorts also asserts, notwithstanding the Supreme Court's caution in *Morales* as to the limits of the superior court's jurisdiction, the underlying rationale of that case authorizes an order to preserve judicial records, including superior court files and probation department records, from his prior cases, his codefendant's cases and the prosecution witnesses' cases, as well as from his own capital trial.

In response to the first issue, we agree with Shorts that he is entitled to an order preserving potentially discoverable materials in the possession of the prosecution and law enforcement authorities relating to all crimes discussed during his trial, whether at the guilt or penalty phase. The trial court's failure to order preservation of those materials was an abuse of its discretion. As to the second issue, we agree with the Attorney General and the superior court that only material potentially discoverable under section 1054.9 is properly subject to a preservation order. Accordingly, we grant Shorts's petition for a writ of mandate in part and direct the superior court to enter a new order granting, in addition to those materials previously ordered to be preserved, those portions of Shorts's motion that sought to preserve potentially discoverable materials in the possession of the prosecution and law enforcement authorities relating to all prior crimes and alleged prior criminal conduct that were the subject of evidence introduced by the prosecutor at the guilt and penalty phases of his capital trial, including offenses identified in the People's notice of evidence in aggravation.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *The Capital Trial*

Shorts was charged with three counts of capital murder for the shooting deaths of Charlie Wynne, Kevin Watts and Michael Livingston.[2] The People alleged as special circumstances that Shorts had previously been convicted of murder, Shorts was guilty of multiple murders as charged in the pending case, the murders were perpetrated by the intentional discharge of a firearm from a motor vehicle and the murders were carried out to further the activities of a criminal street gang. (§ 190.2, subd. (a)(2), (3), (21) & (22).)

At trial, in addition to evidence of Shorts's role in the murders of Wynne, Watts and Livingston, the prosecutor presented evidence underlying Shorts's conviction for the 2005 murder of Gerald Brooks in San Bernardino County.[3] Shorts, who testified at trial, was cross-examined at the guilt phase about the Brooks murder, and victim impact testimony relating to that crime was presented at the penalty phase.

Shorts was also questioned at trial regarding his alleged participation in the unadjudicated homicide of Isiah Parker. (Although Shorts had initially been charged in connection with Parker's death, those charges were later dismissed.) Victim impact testimony about the Parker murder was presented at the penalty phase.

---

[2] The Livingston case started as a separate case but was later consolidated with the Wynne/Watts case.

[3] Shorts was serving a sentence of life without the possibility of parole for the Brooks murder when the charges in this case were filed against him.

4

In addition to evidence about the Brooks and Parker murders, the penalty phase also included evidence of other criminal activity by Shorts in Los Angeles and San Bernardino Counties. Each of these crimes was identified in the notice of evidence in aggravation filed by the Los Angeles County District Attorney's Office. (§ 190.3, 4th par.)

The jury convicted Shorts on all three counts of murder; the four special circumstances allegations were found true. On November 29, 2010 Shorts was sentenced to death for the murders of Wynne and Watts and to life without the possibility of parole for Livingston's murder. His automatic appeal is pending before the California Supreme Court.

2. *The Record Preservation Motion*

The Supreme Court appointed the State Public Defender to serve as appellate counsel for Shorts in February 2015. In July 2016 appellate counsel filed a motion in the superior court on Shorts's behalf to preserve evidence, exhibits and other potentially discoverable material pending appointment of counsel for habeas corpus proceedings[4] and disposition of all postconviction proceedings. The court denied the motion, ruling

---

[4] As amended by section 16 of Proposition 66, the Death Penalty Reform and Savings Act of 2016, adopted at the November 8, 2016 general election, Government Code section 68662 provides an indigent state prisoner subject to a capital sentence is entitled to the appointment by the superior court of one or more counsel to represent the prisoner in state postconviction proceedings. (See also Pen. Code, § 1509.) Until habeas counsel is appointed, appellate counsel's responsibilities include preserving evidence that comes to her attention if that evidence appears relevant to a potential habeas corpus investigation. (*Morales, supra*, 2 Cal.5th at pp. 526-527.)

5

it lacked jurisdiction to issue a record preservation order, but without prejudice in light of the then-pending *Morales* case.

After the Supreme Court decided *Morales*, *supra*, 2 Cal.5th 523, recognizing the superior court's jurisdiction to order record preservation in capital cases, counsel filed a renewed motion, which requested an order requiring preservation of files, records, evidence and exhibits relating to the Wynne, Watts, Livingston, Parker and Brooks homicides. Shorts also sought preservation of prosecution and law enforcement investigative records as to other crimes set forth in the People's notice of aggravation and introduced at trial.[5]

The People opposed the motion in part, arguing it sought preservation of materials from "extraneous cases" beyond the scope of section 1054.9: "[O]nly materials which are held by law enforcement agencies and that concern the investigation or prosecution of the defendant's capital case may be ordered preserved." The opposition also argued that judicial records were not subject to preservation under *Morales*.

---

[5] The renewed motion asked the superior court to order the following entities to preserve specified files, records, evidence and exhibits: the Los Angeles County Superior Court, the Los Angeles County District Attorney, the Los Angeles County Sheriff's Department, the Los Angeles County Coroner-Medical Examiner, the Los Angeles County Probation Department, the Los Angeles Police Department, the San Bernardino County Superior Court, the San Bernardino County District Attorney, the San Bernardino County Sheriff's Department, the San Bernardino County Coroner-Medical Examiner, the Redlands Police Department, the Long Beach Police Department, the Rialto Police Department, the Fullerton Police Department, the California Highway Patrol and the California Department of Corrections and Rehabilitation.

6

On August 15, 2017 the superior court granted in part and denied in part Shorts's renewed motion to preserve evidence. With respect to the Los Angeles District Attorney, the court granted the request as to materials involving the Wynne, Watts and Livingston murders, but denied the request as to the Parker homicide and the other incidents introduced as evidence of aggravation (noting that, to some extent, that material would be preserved as part of the order directed to the District Attorney's files relating to the Wynne, Watts and Livingston prosecutions). The request to preserve records of the San Bernardino District Attorney regarding the Brooks prior conviction was denied.

With respect to the request to preserve materials held by various law enforcement agencies, the court granted the motion only as to records related to the Wynne, Watts and Livingston murders[6] and denied the request as it pertained to the Brooks homicide,[7] the Parker homicide and the evidence listed in the notice of aggravation. The court limited the records sought from the California Department of Corrections and Rehabilitation (CDCR) and the Los Angeles County Probation Department to reports generated in connection with "this case," and denied the

[6] The court granted in full the request to preserve the records of the Rialto Police Department and the California Highway Patrol.

[7] By denying the record preservation request as to the Brooks homicide, the trial court denied the request to preserve records from the San Bernardino County District Attorney's Office, the San Bernardino County Sheriff's Department, the Redlands Police Department, the Long Beach Police Department and the Fullerton Police Department. As to these entities, however, the court granted the renewed motion to the extent it sought to preserve records pertaining to impeachment evidence.

request as to the Los Angeles County Coroner-Medical Examiner and the San Bernardino County Coroner-Medical Examiner. The court also declined to order the Los Angeles Superior Court or the San Bernardino Superior Court to preserve judicial records.

Shorts petitioned this court for a writ of mandate, alleging the superior court had breached its ministerial duty to order the preservation of potentially discoverable prosecutorial and law enforcement materials. After receiving opposition from the Attorney General and a reply in support of Shorts's petition, we issued an order to show cause why the relief requested in the petition should not be granted.

## DISCUSSION

1. *The Need for Extraordinary Writ Relief*

Shorts contends he has a right to an order preserving all materials potentially discoverable under section 1054.9 (see *Morales*, *supra*, 2 Cal.5th at p. 531 ["discovery is available as a matter of right under Penal Code section 1054.9, provided the motion satisfies the statutory requirements"]) and that this right may be substantially impaired—that is, there is a danger materials relevant to a potential habeas corpus investigation will be destroyed, discarded or lost through inadvertence or negligence—if the superior court's order denying in part his motion for a record preservation order is allowed to stand (see *id.* at pp. 531, 533 [absent a preservation order, "some of the evidence to which [an inmate] would be entitled may be at risk of being lost, which would render moot the trial court's power to grant discovery" under section 1054.9; "our inability to timely appoint habeas corpus counsel in capital cases should not operate to deprive condemned inmates of a right otherwise available to them"].) Like a discovery order that requires disclosure of a

8

party's confidential information, a result that once done cannot be undone, the loss of potentially discoverable information because of the superior court's arguably erroneous interpretation of section 1054.9 and *Morales* is appropriately addressed by a writ of mandate. (Code Civ. Proc., § 1085, subd. (a) [writ of mandate may issue "to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust or station"]; see *Costco Wholesale Corp. v. Superior Court* (2009) 47 Cal.4th 725, 740-741 [writ review appropriate when petitioner seeks relief from a discovery order that may undermine a privilege]; see also *In re Steele* (2004) 32 Cal.4th 682, 692 [superior court's discovery order under section 1054.9 may be challenged by either party by a petition for writ of mandate in the court of appeal].)

As the Attorney General argues, mandate does not lie to control the exercise of a court's discretion. (*Hurtado v. Superior Court* (1974) 11 Cal.3d 574, 579.) But it is an appropriate remedy to compel a court or government officer to exercise that discretion "'under a proper interpretation of the applicable law.'" (*People v. Rodriguez* (2016) 1 Cal.5th 676, 684, quoting *Anderson v. Phillips* (1975) 13 Cal.3d 733, 737; see *Babb v. Superior Court* (1971) 3 Cal.3d 841, 851 ["[a]lthough it is well established that mandamus cannot be issued to control a court's discretion, in unusual circumstances the writ will lie where, under the facts, that discretion can be exercised in only one way"].) "'"[W]here one has a substantial right to protect or enforce, and this may be accomplished by such a writ, and there is no other plain, speedy and adequate remedy in the ordinary course of law, he [or she] is entitled as a matter of right to the writ, or perhaps more correctly, in other words, it would be an abuse of discretion to

9

refuse it.”’”’” (*Powers v. City of Richmond* (1995) 10 Cal.4th 85, 114.)

    2.  *Standard of Review; Principles of Statutory Interpretation*

Whether the superior court erred in refusing to extend its record preservation order to materials relating to Shorts's prior crimes and alleged prior criminal conduct raised by the prosecutor during the guilt and penalty phases of his trial primarily presents a question of statutory construction. Our review is de novo. (*People v. Prunty* (2015) 62 Cal.4th 59, 71 [reviewing court must consider questions of statutory interpretation de novo]; *Rubio v. Superior Court* (2016) 244 Cal.App.4th 459, 471 [“because the issue before us turns on the interpretation of section 1054.9, subdivision (d), our review is de novo”].)

“‘“‘As in any case involving statutory interpretation, our fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose.’”’”’ (*People v. Gonzalez* (2017) 2 Cal.5th 1138, 1141.) “‘“‘We begin by examining the statute's words, giving them a plain and commonsense meaning.’”’”’ (*Ibid.*) We “give meaning to every word in [the] statute and . . . avoid constructions that render words, phrases, or clauses superfluous.” (*Klein v. United States of America* (2010) 50 Cal.4th 68, 80.) “We must follow the statute's plain meaning, if such appears, unless doing so would lead to absurd results the Legislature could not have intended.” (*People v. Birkett* (1999) 21 Cal.4th 226, 231.)

“If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy.” (*Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737; accord, *Imperial*

10

*Merchant Services, Inc. v. Hunt* (2009) 47 Cal.4th 381, 388.)
"Ultimately we choose the construction that comports most
closely with the apparent intent of the lawmakers, with a view to
promoting rather than defeating the general purpose of the
statute." (*Allen v. Sully-Miller Contracting Co.* (2002) 28 Cal.4th
222, 227.)

>   3. *Section 1054.9*

In June 1990 the voters adopted Proposition 115, which
added sections 1054 through 1054.7 to the Penal Code
establishing a comprehensive discovery system for criminal
actions and a constitutional provision declaring pretrial discovery
in those actions to be reciprocal (Cal. Const., art. I, § 30,
subd. (c)). Effective January 1, 2003, the Legislature enacted
section 1054.9, augmenting Proposition 115 by providing
"postconviction discovery in specified circumstances." (*People v.
Superior Court* (*Pearson*) (2010) 48 Cal.4th 564, 567 (*Pearson*).)
"Although the general rule is that a person seeking habeas
corpus relief from a judgment of death is not entitled to
postconviction discovery unless and until a court issues an order
to show cause" (*Morales*, *supra*, 2 Cal.5th at p. 528), the
Legislature "partially abrogated this rule by enacting Penal Code
section 1054.9." (*Ibid.*)[8]

Section 1054.9, subdivision (a), provides, "Upon the
prosecution of a postconviction writ of habeas corpus or a motion

---

[8]     As Justice Werdegar explained in her dissenting opinion in
*Barnett v. Superior Court* (2010) 50 Cal.4th 890, 907, "In 2002,
dissatisfied with this court's refusal to permit postconviction
discovery motions [citation], the Legislature directed courts to
provide convicted defendants with any 'materials . . . to which
[they] would have been entitled at [the] time of trial' [citations]."

to vacate a judgment in a case in which a sentence of death or of life in prison without the possibility of parole has been imposed, and on a showing that good faith efforts to obtain discovery materials from trial counsel were made and were unsuccessful, the court shall, except as provided in subdivision (c), order that the defendant be provided reasonable access to any of the materials described in subdivision (b)." Section 1054.9, subdivision (b), in turn, provides, "For purposes of this section, 'discovery materials' means materials in the possession of the prosecution and law enforcement authorities to which the same defendant would have been entitled at time of trial."

"The legislative history behind section 1054.9 shows that the Legislature's main purpose was to enable defendants efficiently to reconstruct defense attorneys' trial files that might have become lost or destroyed after trial." (*Barnett v. Superior Court* (2010) 50 Cal.4th 890, 897.) However, although file reconstruction "is one purpose, perhaps even the main purpose, of the statute, the statutory language is not so limited" (*In re Steele*, *supra*, 32 Cal.4th at p. 693) and includes discovery of materials "to which a defendant *would have been entitled* had he or she requested them" at the time of trial (*id.* at p. 696). "Discovery on habeas corpus is necessarily directed at issues raised or potentially raised on habeas corpus, which may or may not relate to any of the evidence presented or not presented in the underlying criminal trial." (*Pearson*, *supra*, 48 Cal.4th at p. 572.)

As the *Steele* Court explained, section 1054.9 entitles a defendant to "discovery of specific materials currently in the possession of the prosecution or law enforcement authorities involved in the investigation or prosecution of the case that the defendant can show either (1) the prosecution did provide at time

12

of trial but have since become lost to the defendant; (2) the prosecution should have provided at time of trial because they came within the scope of a discovery order the trial court actually issued at that time, a statutory duty to provide discovery, or the constitutional duty to disclose exculpatory evidence; (3) the prosecution should have provided at time of trial because the defense specifically requested them at that time and was entitled to receive them; or (4) the prosecution had no obligation to provide at time of trial absent a specific defense request, but to which the defendant would have been entitled at time of trial had the defendant specifically requested them." (*In re Steele*, *supra*, 32 Cal.4th at p. 697.)

Although section 1054.9 "does not allow 'free-floating' discovery asking for virtually anything the prosecution possesses" (*In re Steele*, *supra*, 32 Cal.4th at p. 695), it "carves out particular categories of material as subject to postconviction discovery" (*Morales*, *supra*, 2 Cal.5th at p. 533) to which the discovery chapter "may provide guidance in crafting discovery orders on habeas corpus." (*Pearson*, *supra*, 48 Cal.4th at p. 572; see *Barnett v. Superior Court*, *supra*, 50 Cal.4th at p. 902 ["Because we did not read section 1054.9 as creating a broader postconviction discovery right than exists pretrial, we concluded [in *Steele*] that the 'law enforcement authorities' referred to in section 1054.9 are similar to the 'investigating agencies' referred to in Penal Code section 1054.1. [Citation.] We also found instructive the provisions of Penal Code section 1054.5, subdivision (a), which seemed to define further what investigating agencies the pretrial discovery provisions cover."].)

### 4. *The Morales Decision*

In *Morales*, *supra*, 2 Cal.5th 523 the Supreme Court considered whether a superior court has jurisdiction to grant a motion to preserve evidence potentially discoverable under section 1054.9 relating to a capital case then pending review on automatic appeal to the Supreme Court.  The court of appeal in *Morale*s had issued a peremptory writ directing the superior court to vacate the preservation order it had issued, reasoning the superior court lacked jurisdiction to grant a motion for preservation when, because of the appeal pending in the Supreme Court, no criminal proceeding was then before it.  (*Morales*, at p. 530.)

The Supreme Court acknowledged the court of appeal was generally correct that a discovery motion "is not an independent right or remedy but rather is ancillary to an ongoing action or proceeding," but explained there is no requirement a habeas corpus petition must have been filed at the time discovery under section 1054.9 is sought and the statute imposes no constraint on the timing of the motion other than it occur after sentencing and in the prosecution of a habeas corpus petition.  (*Morales*, *supra*, 2 Cal.5th at pp. 530-531.)  Thus, the superior court had jurisdiction to entertain a motion under section 1054.9, which Morales sought to invoke.  (*Morales*, at p. 531.)  However, habeas corpus counsel had not yet been appointed for Morales, and might not be for many years; and filing a section 1054.9 discovery motion was outside the scope of his appellate counsel's appointment.  (*Morales*, at p. 531.)  Under these circumstances and to avoid the risk of loss of evidence to which Morales would be entitled under section 1054.9, the Supreme Court held granting a preservation motion falls within the superior court's

inherent power under Code of Civil Procedure section 187[9] to adopt any suitable method of practice not specified by statute to protect its jurisdiction: "[T]rial courts, which have jurisdiction under Penal Code section 1054.9 to grant condemned inmates' motions for postconviction discovery, have the inherent power to protect that jurisdiction by entertaining motions for the preservation of evidence that will ultimately be subject to discovery under that statute when the movant is appointed habeas corpus counsel." (*Morales*, at p. 533.)

The *Morales* Court articulated several significant limitations on the scope of section 1054.9 and the superior court's authority to issue record preservation orders. First, it cautioned that section 1054.9 did not supersede the traditional rule that discovery is unavailable in habeas corpus matters before the court has issued an order to show cause. "The statute carves out particular categories of material as subject to postconviction discovery, and nothing in its language or the legislative history suggests the Legislature intended the statute to serve as a predicate for more wide-ranging postconviction discovery." (*Morales*, *supra*, 2 Cal.5th at p. 533.) Second, the Court repeated its observation from *In re Steele*, *supra*, 32 Cal.4th at page 696, that section 1054.9 "'does not extend to all law enforcement authorities everywhere in world,'" but only to "'law enforcement

---

[9]     Code of Civil Procedure section 187 provides, "When jurisdiction is, by the Constitution or this Code, or by any other statute, conferred on a Court or judicial officer, all the means necessary to carry it into effect are also given; and in the exercise of this jurisdiction, if the course of proceeding be not specifically pointed out by this Code or the statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this code."

authorities who were involved in the investigation or prosecution of the case.'" (*Morales*, at p. 534.) Third, the Court stated section 1054.9 "does not extend to judicial or other non-law-enforcement agencies." (*Morales*, at p. 534.) Finally, the Court warned, "An order purporting to require the preservation of materials beyond the scope of Penal Code section 1054.9 would thus exceed the trial court's jurisdiction on a motion to preserve evidence." (*Id.* at p. 535.)

> 5. *The Record Preservation Order Should Have Covered Materials Relating to Shorts's Prior Crimes and Alleged Prior Criminal Conduct Beyond Those Maintained in the District Attorney's Files for the Prosecution of the Wynne, Watts and Livingston Murders*

Under *Morales* a condemned inmate who does not yet have appointed habeas corpus counsel is entitled to an order preserving all materials potentially discoverable under section 1054.9. (*Morales, supra*, 2 Cal.5th at p. 534 ["[q]uestions as to whether a movant is actually entitled to discovery of the material to be preserved . . . will await the eventual filing and determination of the postconviction discovery motion"].) Thus, the range of materials within the scope of the preservation order should mirror the breadth of potential section 1054.9 discovery, which, as discussed, includes, upon a proper showing of a good faith effort to obtain the materials from trial counsel, items "to which the defendant would have been entitled at time of trial had the defendant specifically requested them." (*In re Steele, supra*, 32 Cal.4th at p. 697.)

The Attorney General does not dispute that the Brooks murder, charged as one of the special circumstances, the unadjudicated Parker homicide and the other criminal conduct identified as aggravating circumstances in the penalty phase of

Shorts's capital trial were proper subjects for pretrial discovery, that is, the prosecution and related law enforcement authorities would have been obligated to turn over material relating to those matters had there been a specific defense request. Indeed, he conceded in the superior court that evidence relating to Shorts's prior convictions or uncharged conduct was properly subject to a preservation order to the extent it was part of the records of the Wynne/Watts/Livingston prosecutors. (See *People v. Superior Court* (*Mitchell*) (1993) 5 Cal.4th 1229, 1233, 1236 ["the penalty phase of a capital trial is merely a part of a single, unitary criminal proceeding"; the reciprocal discovery obligations of section 1054 et seq. apply to "penalty phase evidence"].) At least as to this category of evidence, the dispute is not about what material is subject to a preservation order, but to whom that order may be directed.

As the Supreme Court explained in *In re Steele*, *supra*, 32 Cal.4th at page 696, section 1054.9 "presents the question of exactly who must possess the materials for them to come within its scope." Section 1054.9, subdivision (b), limits postconviction discovery to "'materials in the possession of the prosecution and law enforcement authorities.'" Although that provision "does not require that the prosecutor *know* the materials are in the possession of investigating agencies" (*Steele*, at p. 696),[10] the

_____

[10]    Drawing a parallel to cases involving a prosecutor's constitutional duty to disclose exculpatory information, the *Steele* Court noted that "'any favorable evidence known to the others acting on the government's behalf is imputed to the prosecution. . . .' [T]he prosecution is responsible not only for evidence in its own files but also for information possessed by others acting on the government's behalf that were gathered in connection with the investigation.'" (*In re Steele, supra*,

Court held, in light of the general discovery provisions of section 1054 et seq., the reference to "law enforcement authorities" in section 1054.9 is properly limited to "law enforcement authorities involved in the investigation or prosecution of the case." (*Steele*, at p. 697; see also *Morales*, *supra*, 2 Cal.5th at p. 534 [quoting *Steele*'s language].)

The Attorney General argues, and the superior court found, only those law enforcement agencies that had actively investigated the Wynne/Watts/Livingston murders, rather than Shorts's prior crimes and other alleged prior criminal conduct that were also placed at issue during the guilt and penalty phases of Shorts's capital trial, were "involved in the investigation or prosecution of the case." The Attorney General's gloss on the Supreme Court's language in *Steele* and *Morales* is far too narrow.

Shorts's prosecutor from the Los Angeles District Attorney's Office had access to the information gathered by the various law enforcement agencies that investigated the Brooks murder (in both Los Angeles and San Bernardino Counties), the Parker homicide and the other incidents identified in the People's notice of evidence of aggravation; and that information was discoverable prior to trial. (See *In re Littlefield* (1993) 5 Cal.4th 122, 135 ["materials discoverable by the defense include information in the possession of all agencies (to which the prosecution has access) that are part of the criminal justice system, and not solely information 'in the hands of the prosecutor'"].) As discussed, during the guilt phase of the trial Shorts was cross-examined about his role in Brooks's and

_____

32 Cal.4th at p. 697, quoting *People v. Superior Court (Barrett)* (2000) 80 Cal.App.4th 1305, 1315.)

Parker's deaths. At the penalty phase 14 witnesses, including from law enforcement, testified about the circumstances underlying his conviction for Brooks's murder; nine witnesses, again including law enforcement officials, testified regarding the Parker homicide; 29 witnesses testified regarding other incidents listed in the notice of evidence in aggravation.

In sum, far from having been involved only in "extraneous cases," as the Attorney General argued in the superior court, law enforcement officials from each of the Los Angeles and San Bernardino County agencies identified in the renewed motion to preserve evidence were active participants in the investigation and prosecution of the capital case against Shorts. Even though originally created or collected in connection with Shorts's prior criminal cases, the law enforcement records from those cases would have been discoverable at the time of trial under section 1054.5, subdivision (a), which authorizes discovery at trial not only from the "prosecuting attorneys [and] law enforcement agencies which investigated or prepared the case against the defendant," but also from "any other persons or agencies which the prosecuting attorney or investigating agency may have employed to assist them in performing their duties." Accordingly, Shorts was entitled to an order that those records be preserved under section 1054.9.

6. *Shorts's CDCR Records Should Have Been Preserved*

The superior court granted Shorts's request to preserve CDCR materials limited to "records pertaining to the investigation or prosecution of appellant in this case only." Concerned about the narrow interpretation of "this case" advocated by the Attorney General and apparently adopted by the superior court, Shorts argues he is entitled to an order

19

preserving CDCR records "pertaining to incidents offered to impeach him at the guilt phase or in aggravation at the penalty phase," not just records relating to his incarceration during the trial. In response, the Attorney General acknowledges the Supreme Court in *In re Steele*, *supra*, 32 Cal.4th at page 701 held CDCR records relating to the defendant's criminal conduct may be discoverable even if the prosecution's case "had nothing to do with them," but, emphasizing that in *Steele* the prosecutor and an investigator had reviewed the defendant's prison records (*id.* at p. 702), contends only those records in the prosecutor's possession are subject to a preservation order under section 1054.9.[11]

Restricting the preservation order to CDCR records actually reviewed by the prosecutor prior to trial is unwarranted. To the extent the CDCR has records relating to any of the incidents about which Shorts was cross-examined during the guilt phase of his trial or that were introduced as evidence of aggravating circumstances in the penalty phase, the prosecutor had access to that information, whether such access was utilized or not; the material would have been discoverable at trial by Shorts, and is properly preserved under *Morales* and section 1054.9.

---

[11] The court of appeal in *People v. Superior Court* (*Barrett*), *supra*, 80 Cal.App.4th at pages 1317-1318, described the CDCR as having both investigatory and administrative responsibilities. Records generated while performing the former function, the court held, are subject to the reciprocal discovery obligations set forth in section 1054 et seq. Documents kept in the course of running the prison system, if discoverable at all, were obtainable by subpoena duces tecum. The Attorney General does not argue that the CDCR records sought to be preserved by Shorts fall into this latter category.

7. *Records from the County Coroner-Medical Examiners Are Subject to Preservation*

Shorts sought preservation of the records of the Los Angeles County Coroner-Medical Examiner relating to the investigation into the deaths of Wynne, Watts and Livingston, the victims of the three murders at issue in his capital trial, as well as material relating to the death of Parker. He also sought preservation of the records of the San Bernardino County Coroner-Medical Examiner relating to the investigation into Brooks's death. The superior court denied the request as to both entities "on the grounds that the entities are not law enforcement agencies involved in the investigation or prosecution of this case, within the meaning of *People v. Superior Court* (*Morales*) . . . ." The court's analysis was doubly flawed.

Autopsies by county coroner-medical examiners serve more than a single purpose. (See *People v. Dungo* (2012) 55 Cal.4th 608, 621 [autopsy reports are used for multiple purposes, including "criminal investigation and prosecution"].) Here, information from the autopsies of the three victims allegedly murdered by Shorts was introduced at his trial; and the pathologists who performed the Brooks and Parker autopsies testified during the penalty phase of the trial. To that extent, the coroner-medical examiner offices are properly considered law enforcement agencies. (See *Dixon v. Superior Court* (2009) 170 Cal.App.4th 1271, 1277 ["It is through the coroner and autopsy investigatory reports that the coroner 'inquire[s] into and determine[s] the circumstances, manner, and cause' of criminally-related deaths. ([Gov. Code, ]§ 27491.) And officially inquiring into and determining the circumstances, manner and cause of a criminally-related death is certainly part of law enforcement investigation."].)

21

In any event, because, as discussed, the right to a preservation order under *Morales* and section 1054.9 extends to information from "other persons or agencies which the prosecuting attorney or investigating agency may have employed to assist them in performing their duties" (§ 1054.5, subd. (a)), Shorts was entitled to an order preserving the records of the two coroners offices relating to the deaths of Wynne, Watts, Livingston, Brooks and Parker. Those offices unquestionably assisted the prosecutor to prepare the capital case against Shorts.

    8. *Morales Precludes An Order Preserving Judicial Records (Los Angeles and San Bernardino Superior Court Files)*

In addition to the preservation of materials in the possession of the prosecution and law enforcement authorities within the meaning of section 1054.9, subdivision (b), Shorts moved for preservation of documents, records, exhibits and reporter transcripts and notes in the possession of the Los Angeles Superior Court relating to the capital case itself, the Parker homicide and other prior criminal cases in which he had been involved and the San Bernardino Superior Court regarding the Brooks murder conviction. Relying upon the *Morales* Court's discussion of the scope of Code of Civil Procedure section 187, and citing various statutes that mandate retention of court records relating to capital cases,[12] Shorts argued the superior court had

---

[12] Shorts cited Government Code section 68152, subdivision (c), which provides in a case in which the defendant is sentenced to death, the court records are to be "retain[ed] permanently, including records of the cases of any codefendants and any related cases, regardless of the disposition." He also cited Penal Code sections 1417.1, subdivision (d), which provides in cases in which the death penalty has been imposed that no order shall be made for the destruction of an exhibit until

inherent authority to preserve judicial records under Code of Civil Procedure sections 128, subdivision (a)(5), and 187.  The court denied this part of the record preservation motion, ruling it had no authority to order preservation of records other than as specified in *Morales*.

While Shorts's observation about the breadth of the superior court's inherent powers is generally accurate, his argument is foreclosed by *Morales*.  As discussed, the Supreme Court in *Morales* recognized the general rule before section 1054.9's effective date was that a person seeking habeas corpus relief from a judgment of death was not entitled to postconviction discovery until an order to show cause had issued. (*Morales*, *supra*, 2 Cal.5th at p. 528.)  Although section 1054.9 "partially abrogated" that rule, permitting habeas corpus counsel to seek particular categories of discovery even before filing the petition, the Court emphasized that discovery outside the circumscribed scope of section 1054.9 was not exempt from the general timing rule.  (*Morales*, at p. 533.)  Thus, although Shorts is correct that section 1054, subdivision (e), preserves a defendant's right to pretrial discovery as provided by statutes other than sections 1050 et seq. or mandated by the United States Constitution, the superior court has no jurisdiction to order pre-petition, postconviction discovery except as authorized by section 1054.9.

As the *Morales* Court explained, a condemned inmate with appointed habeas corpus counsel could immediately obtain discovery of section 1054.9 material.  In light of the inordinate

---

"30 days after the date of execution of sentence," or, if "the defendant dies while awaiting execution, one year after the date of the defendant's death."

delay in appointment of such counsel (more than 20 years after imposition of the sentence of death in some cases), to protect the superior court's jurisdiction to permit that discovery, *Morales* recognized that court's authority under Code of Civil Procedure section 187 to issue a record preservation order.  But the Court clearly held section 1054.9 "does not extend to judicial or other non-law-enforcement agencies" (*Morales*, *supra*, 2 Cal.5th at p. 534), and "[a]n order purporting to require the preservation of materials beyond the scope of Penal Code section 1054.9 would thus exceed the trial court's jurisdiction on a motion to preserve evidence."  (*Id.* at p. 535.)  The superior court properly denied this aspect of Shorts's motion.

9. *Shorts Is Not Entitled to an Expanded Preservation Order Directed to the Los Angeles County Probation Department*

Shorts requested preservation of material potentially held by the Los Angeles County Probation Department, whether as a juvenile or an adult, including records of his custody in juvenile facilities in connection with prior offenses.  The superior court granted the request in part, limited to probation department reports generated in connection with Shorts's capital case.

In his argument to the superior court Shorts characterized these materials as in the possession of a law enforcement agency. However, as he recognized in his petition to this court, "probation department records are court records."  (*County of Placer v. Superior Court* (2005) 130 Cal.App.4th 807, 812; see § 1203.10 ["[t]he record of the probation officer is a part of the records of the court"]; *McGuire v. Superior Court* (1993) 12 Cal.App.4th 1685, 1687 ["the probation file is a court record"].)  Accordingly, for the reasons discussed in the preceding section, Shorts is not entitled

24

to an order to preserve additional probation department materials.

## DISPOSITION

Let a peremptory writ of mandate issue directing respondent superior court to vacate that part of its August 15, 2017 order denying Shorts's record preservation request as it relates to law enforcement or other agency records, including records of the CDCR and the Los Angeles County and San Bernardino County Coroner-Medical Examiners, pertaining to all prior crimes and alleged prior criminal conduct that were the subject of evidence introduced by the prosecutor at the guilt and penalty phases of his capital trial, including offenses identified in the People's notice of aggravation, and to issue a new order granting Shorts's motion for a record preservation order with respect those materials.

PERLUSS, P. J.

We concur:

ZELON, J.

FEUER, J.[*]

---

[*] Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.