Filed 8/28/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re R.C., a Person Coming Under the Juvenile Court Law. | B292083 (Los Angeles County Super. Ct. No. FJ55675) |
| THE PEOPLE, Plaintiff and Respondent, v. R.C., Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Benjamin R. Campos, Juvenile Court Referee. Affirmed.

Law Offices of Esther R. Sorkin and Esther R. Sorkin under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Michael C. Keller and Esther P. Kim, Deputy Attorneys General, for Plaintiff and Respondent.

This case underscores the critical need to educate our youth about the evils of misogyny and sexual bullying, and the virtues of respect, kindness, and compassion. In late 2017, R.C., then a high school student, used his cellphone to record a video of a classmate, K.V. — without her knowledge or permission — while they were engaged in consensual sex. K.V. repeatedly asked him to delete the video. In response, R.C. unsuccessfully tried to condition deletion of the video on K.V.'s agreement to have sex with R.C.'s friend. The juvenile court found R.C. had committed an unauthorized invasion of privacy pursuant to Penal Code[1] section 647, subdivision (j)(3)(A). On appeal, R.C. contends there was insufficient evidence the cellphone was "concealed" as required by the statute. We disagree and affirm. We publish to provide an authoritative interpretation of "concealed" as used in section 647, subdivision (j)(3)(A).

### FACTUAL AND PROCEDURAL BACKGROUND

The People filed a Welfare and Institutions Code section 602 petition alleging then 17-year-old R.C. had committed two misdemeanors: unauthorized invasion of privacy (§ 647, subd. (j)(3), count 1) and distribution of obscene matter (§ 311.2, subd. (a), count 2). R.C. denied the allegations.

The People's sole witness at the jurisdiction hearing was K.V., who testified she and R.C. were classmates, and she believed they were friends. They agreed to have sexual intercourse at the home of Emilio, another classmate who was a friend of R.C. R.C. and K.V. arrived at the house, and Emilio directed them to a bedroom. The couple entered and closed the

---

[1] Statutory references are to the Penal Code, unless otherwise indicated.

door. No one else was in the bedroom, and K.V. believed they were in "a private circumstance."

K.V. testified, "We started having sexual intercourse and then there was a moment when [R.C] said, 'I'm recording, okay,' and then I turned around and the camera, it was right in my face." The camera was pointed at K.V. K.V. had not agreed to being video-recorded and told R.C. to stop. They stopped having sex. K.V. was unable to convince R.C. either to surrender the cellphone or to delete the video-recording.

R.C. then left the room with his phone. After K.V. dressed, she followed him out and found him talking with Emilio. K.V. repeatedly asked R.C. to delete the video, but he refused. "And then after 3 attempts," K.V. testified, R.C. finally said, "'Okay, if you have sex with Emilio.'" After K.V. declined, R.C. unsuccessfully continued to attempt to blackmail her into performing various sex acts with Emilio in exchange for deleting the video. K.V testified: "He said, 'Give him oral sex,' and then I said, 'No,' and I kept saying 'No.'"[2] When K.V. appealed to Emilio for help convincing his friend to delete the recording, he responded, "That's your problem." R.C. and Emilio then left the house.

_____

[2] The petition did not allege R.C.'s degrading efforts to barter deletion of the recording for sex acts, as described by K.V., constituted attempted extortion under section 524, or any other crime. The amendment to section 518 changing the extortion definition to include obtaining "sexual conduct" by wrongful use of force or fear – sometimes called "sextortion"– did not take effect until January 1, 2018 (after the incident occurred). Moreover, even as amended, section 518 "does not apply to a person under 18 years of age who has obtained consideration consisting of sexual conduct . . . ." (§ 518, subd. (c).)

Later that day, K.V. informed R.C. several times she would report him if he did not delete the video. Eventually he told her he had done so. But a month or two later, she heard comments from other people saying "Oh, I saw in the video," or "I heard of a video," causing her to report the incident.

On cross-examination of K.V., the following exchange occurred:

"Defense counsel: So you testified that at one point during sexual intercourse with [R.C.], he said, 'I'm recording, okay,' is that correct?

K.V.: Yes.

Defense counsel: And at that point you looked and you saw he was holding his phone; is that correct?

K.V.: Yes.

Defense counsel: Was he holding it up?

K.V.: He was, yeah, like putting in front.

Defense counsel: When you looked, you saw it right away, is that correct?

K.V.: Yes."

The People introduced no further evidence concerning the cellphone and R.C.'s use of it to make a video recording. R.C. neither testified nor presented other evidence in his defense. When the jurisdiction hearing concluded, the juvenile court dismissed count 2 (distribution of obscene matter) for lack of proof[3] and, following argument by counsel, sustained count 1, (unauthorized invasion of privacy)[4].

---

[3] K.V. testified she never saw the video. Her testimony that others had seen and commented on it was offered for a nonhearsay purpose only, i.e., her reason for reporting the

At the disposition hearing that immediately followed, the juvenile court placed R.C. on probation for six months pursuant to Welfare and Institutions Code section 725, subdivision (a). The Juvenile Court did not declare R.C. a ward of the court. R.C. appealed.

## DISCUSSION

### 1. The Meaning of "Concealed" in Section 647, subdivision (j)(3)(A)

Section 647, subdivision (j)(3)(A) criminalizes the use of "a concealed . . . camera of any type, to secretly . . . record by electronic means, another identifiable person who may be in a state of full or partial undress, for the purpose of viewing the body of, or the undergarments worn by, that other person, . . . in the interior of a bedroom . . .or . . .any other area in which that other person has a reasonable expectation of privacy, with the intent to invade the privacy of that other person."[5]

---

episode to authorities. The parties stipulated that no video was found during the police investigation.

[4] The statute refers to the crime as "disorderly conduct" rather than "unauthorized invasion of privacy." (§ 647.)

[5] Section 647 provides "every person who commits any" of a long list of "acts" is guilty of misdemeanor disorderly conduct. A person who engages in the conduct described in subdivision (j)(3)(A) is among those covered. At the time of the incident, the subdivision read in full: "A person who uses a concealed camcorder, motion picture camera, or photographic camera of any type, to secretly videotape, film, photograph, or record by electronic means, another identifiable person who may be in a state of full or partial undress, for the purpose of viewing the

R.C. contends insufficient evidence supports the juvenile court's finding of unauthorized invasion of privacy. R.C. does not dispute having used his cellphone to video-record K.V. without her permission during sexual intercourse. Instead, he argues there is no evidence his cellphone was "concealed" as required by section 647, subdivision (j)(3)(A). The crux of R.C.'s argument concerns the meaning of that word. But, as noted below, his statutory interpretation argument is tangled up in his mischaracterization of the evidence. While we review the juvenile court's finding for sufficient evidence, statutory interpretation is a question of law we review de novo. (*People v. Johnson* (2015) 234 Cal.App.4th 1432, 1440.) The statute does not define "concealed" and we are unaware of any published decision interpreting that word as used in this statute.

"'""As in any case involving statutory interpretation, our fundamental task … is to determine the Legislature's intent so as to effectuate the law's purpose. [Citation.] We begin by examining the statute's words, giving them a plain and commonsense meaning.""'" (*People v. Gonzalez* (2017) 2 Cal.5th 1138, 1141) We "give meaning to every word in [the] statute and . . . avoid constructions that render words, phrases, or clauses superfluous." (*Klein v. United States of America* (2010) 50 Cal.4th 68, 80.) "'We must follow the statute's plain meaning, if such appears, unless doing so would lead to absurd results the Legislature could not

body of, or the undergarments worn by, that other person, without the consent or knowledge of that other person, in the interior of a bedroom, bathroom, changing room, fitting room, dressing room, or tanning booth, or the interior of any other area in which that other person has a reasonable expectation of privacy, with the intent to invade the privacy of that other person."

have intended.'" (*Shorts v. Superior Court* (2018) 24 Cal.App.5th 709, 720; *Allen v. Sully-Miller Contracting Co.* (2002) 28 Cal.4th 222, 227.)

Where the statutory language permits more than one reasonable interpretation, we may consider other factors, such as the statute's purpose, legislative history and public policy. (*Shorts v. Superior Court, supra*, 24 Cal.App.5th at p. 720; accord *Imperial Merchant Services, Inc. v. Hunt* (2009) 47 Cal.4th 381, 388.) "'Ultimately we choose the construction that comports most closely with the apparent intent of the lawmakers, with a view to promoting rather than defeating the general purpose of the statute.'" (*Shorts,* at p. 720.)

R.C. maintains the plain meaning of "conceal" is "to hide or cover something from view," as defined in *People v. Hill* (1997) 58 Cal.App.4th 1078, 1090 [defendant's tossing of stolen checks from a moving car was not unlawful concealment of evidence], "[t]o hide or withdraw from observation; to cover or keep from sight; to prevent discovery of," (*People v. Eddington* (1962) 201 Cal.App.2d 574, 577 [defendant's movement of merchandise to an unknown location after failing to pay for it was concealment with intent to defraud the seller]), and/or "to hide or withdraw from observation, to cover or keep from sight." (*People v. McGinnis* (1942) 55 Cal.App.2d 931, 936 [In taking his children contrary to a dissolution order, defendant's concealment of them did not necessarily mean they could not be found by reasonable means of discovery].) R.C. reasons these definitions "all imply specific action designed to prevent someone from seeing the object in question [, and that] the victim's [mere] lack of awareness" of the presence of the object does not establish it is concealed.

To be sure, concealing a camera or other recording device may include covering it from view or placing it in a surreptitious location. Apart from the cases cited by R.C., examples of this type of concealment include *Sanders v. American Broadcasting Companies* (1999) 20 Cal.4th 907, 910 [investigative reporter covertly videotaped "psychics" using a small video camera hidden in her hat] and *People v. Gibbons* (1989) 215 Cal.App.3d 1204, 1206 [defendant secretly videotaped his sexual encounters with women using a video camera hidden inside a bedroom closet].)

Nothing in the statute, however, suggests we should ignore the other plain meanings of "concealed," including those found in the cases R.C. cites. According to Merriam-Webster, "conceal" is defined as "to prevent disclosure or recognition of," and as "to place out of sight." (Merriam-Webster Dict. Online, <http://merriam-webster.com/dictionary/conceal> [as of June 2019], archived at <https://perma.cc/S58P-NLTE>). Similarly, Merriam-Webster defines "concealed" as "kept out of sight or hidden from view." (Merriam-Webster Dict. Online, <http://merriam-webster.com/dictionary/concealed> [as of June 2019], archived at <https://perma.cc/S58P-NLTE>). And the definitions of "conceal" in the cases R.C. relies on include "to keep from sight" and "to withdraw from observation."

Here, contrary to R.C.'s revisionist view of the record, R.C. did take "a specific action" designed to prevent K.V. from seeing the cellphone camera: he kept it out of K.V.'s sight and hidden from her view until after he announced he had begun recording. Thus, in the words of the statute, he concealed it from her. The purpose of section 647, subd. (j)(3)(A), as revealed by its

legislative history,[6] is to create a criminal sanction for those individuals secretly photographing or video-recording unwitting victims, who are in a state of full or partial undress and in a place where they have a reasonable expectation of privacy. (See Sen. Com. on Public Safety, Analysis of Sen. Bill No. 1484 (2003-2004 Reg. Sess.) as amended August 9, 2004, pp. B, D, 5.) Nothing indicates an intent by the Legislature that the offending camera or recording device must have been either covered or placed in a surreptitious place. Our view of the plain meaning of the word "concealed" comports with the Legislature's purpose to safeguard privacy interests that were previously subject only to civil law protections. (*Id.* at p. B.)

Finally, R.C. relies on a Utah case interpreting a similar statute. (*State v. Bilek* (UT. Ct. App. 2018) 437 P.3d. 544.) In that case, defendant Bilek provided drugs to a woman, rendering her unconscious. He then photographed her, nude, both alone and in compromising positions with him. The court overturned his conviction under a voyeurism statute that required use of a "camera . . . that is concealed or disguised to secretly . . . record or view by electronic means an individual." The court found evidence the woman was unconscious sufficient to prove she was "secretly" recorded, but insufficient to prove Bilek's camera was "concealed or disguised" because it was in plain view. (*Id.* at p. 14.) But *Bilek* does not ask or answer the question, "Concealed from whom?" It is not our place to interpret the Utah statute, but section 647, subdivision (j)(3)(A) plainly is concerned with a camera that is "concealed" from the person being secretly photographed. Rendering someone unconscious strikes us as an

---

[6] We granted R.C.'s motion to take judicial notice of the subdivision's legislative history.

effective way of keeping a camera out of the victim's sight, and therefore concealed. We do not find *Bilek* persuasive, and in any event, it is distinguishable on the facts.

Nor are we persuaded that our interpretation of "concealed . . .camera" renders the phrase "secretly . . . record" surplusage. If the person being photographed or recorded is told a concealed camera will be used, the "secretly record" element is not met. "Concealed" modifies "camera," while "secretly" modifies "record."

## 2.    The Sufficiency of the Evidence that the Cellphone Was Concealed

Having determined what "concealed" means in the context of section 647, subdivision (j)(3)(A), we now consider whether there is sufficient evidence that R.C. concealed the cellphone within the meaning of the statute.

We review the entire record to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. The record must disclose substantial evidence, i.e., evidence that is reasonable, credible, and of solid value in support of the verdict or finding. (*People v. Hardy* (2018) 5 Cal.5th 56, 89; see *In re Matthew A.* (2008) 165 Cal.App.4th 537, 540.)

Here, substantial evidence demonstrates R.C. committed the offense of unauthorized invasion of privacy. K.V.'s testimony supported the juvenile court's finding that R.C. used a concealed cellphone to secretly video-record her in a state of full or partial undress, in a place where she had a reasonable expectation of privacy, with the intent to invade her privacy. R.C. did not tell K.V. about his intent to video-record them until after he had

begun recording. R.C. positioned the cellphone behind K.V., where it was hidden from her view. K.V. did not realize the cellphone was present until R.C. announced he was recording and she turned her head. Thus, the camera was "concealed" and R.C. used it to "secretly . . . record" K.V. until he made his announcement.

The primary goal of the juvenile justice system is to rehabilitate offenders rather than punish them. (Welf. & Inst. Code section 202, subd. (b).) The rationale for this approach is the susceptibility of some juveniles to immature and irresponsible behavior and the greater likelihood they, as opposed to adults, will be reformed by proper guidance and treatment programs. (*Roper v. Simmons* (2005) 543 U.S. 551, 569-570 [125 S.Ct. 1183, 161 L.Ed.2d. 1].) We note, the juvenile court in this case expressed uncertainty about the availability and effectiveness of existing programs to help R.C. understand the gravity, impact, and reprehensibility of his sexual bullying, lack of compassion, and invasion of K.V.'s privacy. The court ultimately ordered R.C. to undergo individual counseling on sexual boundaries and "case issues." The court also ordered R.C. to interview victims of similar crimes and write a short report on what he had learned. Although K.V. was offered an opportunity to seek restitution, the record provided to us does not reveal whether she was afforded an opportunity to provide a written or oral impact statement (as required by Welf. & Inst. Code section 656.2).

Whether some additional services or programs should be developed to educate and help reform offenders such as R.C., and/or how bench officers could be better informed of existing programs, are issues the Legislature, Los Angeles County

11

Probation Department, and/or court leadership may wish to explore in the future.

## DISPOSITION

The jurisdictional and dispositional orders are affirmed.

## CERTIFIED FOR PUBLICATION


CURREY, J.

We concur:

MANELLA, P. J.


COLLINS, J.